**CLAIMANT ID 100217021, Requesting**
**Party-Appellant**

v.

**BP EXPLORATION & PRODUCTION,**
**INCORPORATED; BP America Production Company; BP, P.L.C., Objecting Parties-Appellees**

**No. 16-30930**

United States Court of Appeals,
Fifth Circuit.

Filed May 18, 2017

Before STEWART, Chief Judge, and HIGGINBOTHAM and COSTA, Circuit Judges.

PER CURIAM: *

Food Giant appeals the district court's denial of its request for discretionary review of a decision by the Deepwater Hori- zon Court Supervised Settlement Program (CSSP). Because Food Giant's case does not involve a contradiction or misapplica- tion of the Economic and Property Dam- ages Class Action Settlement—let .alone a substantial or recurring one—we AF- FIRM.

## I.

Food Giant is an Alabama grocer that purports to have lost $2.4 million as a result of the Deepwater Horizon oil spill. In May 2013, it filed a claim with the CSSP.

As required by Exhibit 4A of the Settle- ment Agreement, Food Giant submitted a claim form and monthly and annual profit and loss statements. The statements did not indicate a date of creation. The Claims Administrator sent Food Giant an incom- pleteness notice asking for that informa- tion. Food Giant replied that the state- ments were prepared in connection with the filing of its claim in February 2013. Food Giant's accountants restated contem- poraneously-kept quarterly statements pursuant to Policy 464. The Administrator thereafter issued a second incompleteness notice requesting that Food Giant submit the original quarterly accounting records its accountants used in creating the month- ly figures.

After receiving those records, the Ad- ministrator denied Food Giant's claim for failing to show losses attributable to the spill. The summary report notes that the program accountants converted the quar- terly numbers to monthly ones pursuant to Policy 495. This was done with simple arithmetic: allocate a percentage to each month in the quarter based on the number of days in that month and then multiply

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion· should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the revenue and costs by that percentage. For example, if January's 31 days make up 34.8% of first quarter numbers (31/89), then January would be allocated that percentage of the quarterly statement. The monthly statements the program accountants created using this method differ from the restated figures Food Giant submitted. Unlike the CSSP's restatement, Food Giant's restatement shows loss under the V-Test the settlement program uses to help establish causation.

Food Giant twice asked the Administrator to reconsider, arguing that Policy 495 did not allow the program accountants to redo the monthly statements Food Giant accountants had created. The Administrator maintained his denial.

Food Giant sought review from a CSSP appeals panel, again asserting that the Administrator misapplied Policy 495 in using it as a basis for restating the quarterly financials into monthly ones. The appeals panel upheld the denial of Food Giant's claim. It held that Policy 218 allowed the actions taken by the program accountants. And it further noted that Policy 495 allows the program accountants leeway in analyzing and restating financials. Food Giant requested that the district court review the appeals panel's decision. The district court declined to do so.

## II.

The district court has discretion to review whether an appeals panel's decision was in compliance with the Settlement Agreement. *In re Deepwater Horizon*, 641 Fed.Appx. 405, 408 (5th Cir. 2016). We review a district court's denial of such review for abuse of discretion. *Holmes Motors, Inc. v. BP Exploration & Prod., Inc.*, 829 F.3d 313, 315 (5th Cir. 2016). Our metric for assessing abuse of discretion is whether the decision not reviewed actually contradicts or misapplies the Settlement Agreement, or has the clear potential to do so. *Id.* Not all contradictions or misapplications, however, warrant review. *Claimant ID 100212278 v. BP Exploration & Prod.*, 848 F.3d 407, 410 (5th Cir. 2017). The issue must be recurring or substantial. *Id.*

■ For starters, Food Giant's argument about a supposed conflict between Policies 218 and 464[1] does not identify a misapplication or contradiction of the Settlement Agreement itself. Both policies interpret Exhibit 4A of the Settlement Agreement, but Food Giant does not couch its argument in terms of a violation of the language to which the parties agreed.

But even if misapplication or contradiction of a policy can demonstrate an abuse of discretion, Food Giant sees a conflict where none exists. Policy 218, which came first, speaks to the problem Food Giant's claim presented. It says program accountants have the ability to convert quarterly financials into monthly ones "by allocating each period's revenue and expense items into their respective months."[2] Policy 464, which came later and

---

[1]. The crux of Food Giant's argument below was that the Administrator erroneously relied on Policy 495. Neither its opening brief nor its reply brief, however, mentions Policy 495. Any claim of error relating to Policy 495 is accordingly forfeited. *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

[2]. Policy 218 reads as follows:

The Program's accountants have the ability to convert the 13-period revenue and expense statements into a twelve month year by allocating each period's revenue and expense items into their respective months. For example, if Period 1 starts on 1/1 and ends on 1/28 and Period 2 starts on 1/29 and ends on 2/25, 100% (28 days/28 days) of the Period 1 revenue and expenses will be included in January as well as 10.71% (3 days/28 days) of Period 2 revenue and expenses. The remaining 89.29% (25 days/28 days) of the Period 2 revenue and expenses will be included in February.

deals with the problem of some small businesses not maintaining accounting records, sets out ways for claimants to satisfy Exhibit 4A's requirement of monthly profit and loss statements.[3] Pertinently, it states that claimants that did not maintain monthly accounting in the regular course of business "may create such monthly statements based on contemporaneous alternate source documents...."

Food Giant sees a conflict by arguing as follows: Because Policy 218 applies only when a claimant submits quarterly statements, the program accountants cannot rely on it to restate the monthly statements that Food Giant submitted. In other words, Food Giant submitted monthly statements, so Policy 218 was not implicated.

This ignores that Food Giant's monthly statements were not contemporaneous accounting records but instead reallocations of the quarterly statements it kept in the regular course of business. Rather than suggesting that monthly statements a claimant creates from original accounting records are conclusive, Policy 464 expressly contemplates that such restated financials are subject to scrutiny in light of the original source material: "The Claims Administrator reserves the right to require submission of all or parts of the underlying source documentation to verify the accuracy of any P & Ls that are created." *See*

CLAIMS ADMINISTRATOR POLICY 464, ¶ II.F.2. Nothing in Policy 464 suggests, let alone imposes, a limitation on the ways in which the Administrator may review contemporaneously-maintained quarterly records or restate them.

Food Giant's true beef appears to be not with any interpretation or application of the Settlement Agreement or policies but with the discrepancy between its restated monthly figures and those of the CSSP. Namely, Food Giant asserts that the Administrator's restated monthly financials do not accurately reflect its economic reality. Whatever the merit of Food Giant's contention—and the logic of its economic argument is not apparent—it resembles a factbound attack on a decision about a single claimant as opposed to a recurring issue about the meaning of the Settlement Agreement that will substantially impact other cases. *Claimant ID 100212278*, 848 F.3d at 410.

Food Giant offers another reason its case purportedly warrants review: the claimant-friendly nature of the Settlement Agreement is supposedly at odds with the rejection of its claim. In support of this contention, Food Giant cites various sections of the Settlement Agreement that it characterizes as "claimant friendly." That may be so. But Food Giant does not allege that the Administrator misapplied any of those provisions. Nor does Food Giant

---

**3.** The relevant portions of Policy 464 are below:

[II.] **A. General Requirement.** In support of a BEL claim, Section 4 of Exhibit 4A of the Settlement Agreement Framework requires claimants to submit, for the claimed Benchmark Period, 2010 and, if applicable, 2011, either (1) monthly and annual profit and loss statements or (2) alternate source documents establishing monthly revenues and expenses.

. . .

[II. F.] **1. Claimants Subject to This Subsection of This Policy.** Subsection II.F of this policy applies to BEL claimants that [ ] did

not maintain monthly and/or annual profit and loss statements in the regular course of their business, prepared at or near the time of the events recorded. . . .

. . .

[II. F.] **2. Duty of Claimants to Create P & Ls.** A claimant subject to Subsection II.F may create such monthly statements based on contemporaneous alternate source documents. . . . The Claims Administrator reserves the right to require submission of all or parts of the underlying source documentation to verify the accuracy of any P & Ls that are created.

show how either Policy 464 or Policy 218 contradicts those sections. Instead, Food Giant herds the sections, identifies a common theme, and says the CSSP's denial of its claim is at odds with that theme. As with Food Giant's first claim, this does not meet our abuse of discretion metric.

Because the district court did not abuse its discretion in denying review, we AFFIRM.[4]

---

4. At oral argument, Food Giant emphasized a due process argument focusing on its inability to obtain further review, or alternatively to opt out of the Settlement Agreement. This was neither raised below nor mentioned in Food Giant's opening brief. Not until Food Giant's reply brief does it appear, and even then the discussion of it is cursory. The issue is thus forfeited. *See Cinel*, 15 F.3d at 1342–45 (noting that a party forfeits any arguments not raised below, mentioned for the first time in a reply brief, or that are inadequately briefed).