# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30396
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

November 28, 2018

Lyle W. Cayce
Clerk

CLAIMANT ID 100227611,

    Requesting Party - Appellant

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP, P.L.C.,

    Objecting Parties - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-1109

Before KING, SOUTHWICK, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

Greater Baton Rouge Surgical Hospital claims economic losses from the 2010 Deepwater Horizon oil spill pursuant to a court-supervised class settlement. The settlement program's claims administrator denied the Hospital's claim because it determined the Hospital could not sufficiently attribute its economic losses to the spill under the settlement's prescribed

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

formulae. An appeal panel affirmed the claims administrator's decision. The Hospital then sought discretionary review from the federal district court overseeing the settlement, which entered an order denying review. The Hospital now appeals that order.

For the reasons explained below, we conclude that the district court did not abuse its discretion in denying review. Accordingly, we AFFIRM.

**I.**

This appeal arises from the April 2010 Deepwater Horizon oil spill in the Gulf of Mexico.[1] In the wake of that disaster, BP entered into a court-supervised settlement agreement with a class of plaintiffs who suffered economic and property damage because of the spill. *See In re Deepwater Horizon I*, 785 F.3d 986, 989 (5th Cir. 2015). Under the terms of that settlement, a claimant submits its claim to the settlement program's claims administrator, who determines the claim's validity. *See id.* The claims administrator's decision is subject to review by an appeal panel. *See id.* A claimant who is unsatisfied with the appeal panel's decision may then request discretionary review from the federal district court supervising the settlement program. *See id.*

To claim business economic losses under the terms of the settlement, most claimants must show that their losses fit one of several patterns—as detailed in the settlement agreement—that support an inference that the spill caused the losses. Some claimants need only show a decline in revenues of a certain magnitude during the compensation period and a subsequent rebound. But the settlement agreement subjects claimants whose losses do not neatly fit this pattern to additional requirements. Under the decline-only revenue

---

[1] We have recounted the details of that historic disaster in countless prior appeals and thus do not repeat them here. *See, e.g.*, *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 418 (5th Cir. 2013).

pattern, a claimant whose revenues declined at the time of the spill but did not rebound thereafter must show (1) evidence of some extrinsic factor that prevented the claimant's revenues from rebounding and (2) a change in the geographic makeup of the claimant's clientele that temporally corresponded to the spill. Under this latter requirement—the so-called customer mix test—the claimant must show a 10 percent decline "in the share of total revenue generated by" either nonlocal customers[2] or customers residing in one of the three geographic zones most severely affected by the spill.

Greater Baton Rouge Surgical Hospital (the "Hospital") is a now-defunct outpatient surgical center. The Hospital submitted a business-loss claim to the BP settlement program. The claims administrator found that the Hospital met the first two requirements to show causation under the decline-only revenue pattern but failed to meet the third. That is, the Hospital showed its revenues sufficiently declined during the compensation period and attributed its failure to recover to external factors (specifically, increased competition and declining referrals). But the claims administrator determined that the Hospital failed the customer mix test because it could not show a decline in revenues from patients residing in the relevant geographic areas.

In the claims administrator's eyes, the problem was that the revenue the Hospital could tie to specific patients with known addresses did not match the revenue the Hospital reported on its profit and loss statements ("P&Ls").[3] Thus, the claims administrator attributed the additional revenue to unknown patients and presumed all unknown patients during the compensation period were either nonlocal patients or lived in the three most affected spill zones

---

[2] The settlement agreement defines nonlocal customers as those residing more than 60 miles from the claimant's place of business.

[3] The settlement agreement requires all business claimants to submit monthly and annual P&Ls detailing revenue categories and expense line items for the relevant periods.

while all unknown patients during the benchmark period (the period before the spill used to measure changes following the spill) were local customers not from the three most affected zones.

The Hospital argued to the appeal panel that the revenues reflected on its P&Ls did not correspond to patients it actually treated during the time periods for which it recorded the revenues because of various accounting idiosyncrasies unique to the healthcare industry. Thus, it argued that the claims administrator should not have looked to its P&Ls when applying the customer mix test. Instead, the Hospital pointed to extensive spreadsheets that it submitted reflecting patient data and revenues it attributed to each patient. The Hospital said these spreadsheets included all patients treated during the relevant periods and showed the necessary geographic shift in its clientele to satisfy the customer mix test.

The Hospital's explanation failed to convince the appeal panel. Citing the district court's analysis of similar claims, it concluded that the revenues a claimant reports on its P&Ls must correspond to the revenues the claimant uses to calculate its customer mix. Further, it explained that because the Hospital's P&Ls evinced revenues that the Hospital's customer-mix data did not account for, the claims administrator properly attributed these revenues to unknown patients and presumed those unknown patients did not reflect a geographic shift.

The Hospital requested discretionary review from the district court. The district court denied the Hospital's request without elaboration. The Hospital now appeals that order.

## II.

Because the district court's review of the appeal panel is discretionary, we only reverse its orders denying review if it abuses its discretion. *See Claimant ID 100212278 v. BP Expl. & Prod., Inc.*, 848 F.3d 407, 410 (5th Cir.

2017). That said, our cases have been somewhat inconsistent on the extent of the district court's discretion to deny review. On the one hand, we have said that our "review is effectively de novo" when the district court is presented "with purely legal questions" of how the settlement's terms should be interpreted. *In re Deepwater Horizon II*, 785 F.3d 1003, 1011 (5th Cir. 2015). On the other hand, we have clarified "that it is 'wrong to suggest that the district court must grant review of *all* claims that raise a question about the proper interpretation of the Settlement Agreement.'" *Claimant ID 100212278*, 848 F.3d at 410 (quoting *Holmes Motors, Inc. v. BP Expl. & Prod.*, 829 F.3d 313, 316 (5th Cir. 2016)). But under either formulation, it is clear that the district court generally does not abuse its discretion by "deny[ing] a request for review that 'involve[s] no pressing question of how the Settlement Agreement should be interpreted or implemented, but simply raise[s] the correctness of a discretionary administrative decision in the facts of a single claimant's case.'" *Id.* (second and third alterations in original) (quoting *In re Deepwater Horizon III*, 641 F. App'x 405, 410 (5th Cir. 2016)); *see also Deepwater Horizon I*, 785 F.3d at 999 (warning that "to turn the district court's discretionary review into a mandatory review[] . . . would frustrate the clear purpose of the Settlement Agreement to curtail litigation").

To resolve this appeal, we need not demarcate the exact perimeter of the district court's discretion. To the extent that the Hospital argues the appeal panel misinterpreted the settlement agreement, the Hospital's arguments fail even on de novo review. And to the extent that the Hospital argues the appeal panel misapplied the settlement agreement to the facts of this case, we find no abuse of discretion in the district court's decision to let any potential errors lie.

The Hospital argues that the appeal panel misinterpreted the language of the customer mix test by considering revenues represented by contractual-adjustment line items in the Hospital's P&Ls as revenues from unknown

patients. This was improper, the Hospital insists, because under the terms of the settlement agreement, the claims administrator must determine whether the customer mix changed based on the revenue generated by customers alone. Thus, the claims administrator should have excluded contractual-adjustment revenue, because it is not revenue "generated by customers." Even assuming the Hospital is correct that the contractual-adjustment revenue is not "generated by customers,"[4] its assertion that the customer mix test only considers revenue "generated by customers" finds no support in the text of the settlement agreement.

In relevant part, the customer mix test states that a claimant must "demonstrate[] proof of a decline of 10% in the share of total revenue generated by customers located in" the geographic zones most heavily affected by the spill over the course of three consecutive months. Ignoring the postpositive modifier "located in," the Hospital appears to argue that the "total revenue" the claims administrator must consider is the total only of "revenue generated by customers." This cannot be. The phrase "generated by customers" must modify "share" instead of "total revenue"; otherwise, the customer mix test would leave entirely unexplained exactly what "share" of the revenue must decline for the test to be met. And even more fundamentally, the phrase "generated by customers" is limited by the phrase "located in." If the customer mix test considered only the "total revenue generated by customers located in" the affected zones, then there would be no broader set of revenue with which to

---

[4] Although the economic realities of medical billing might obfuscate the specific source of the revenues reflected in the Hospital's contractual-adjustment line items, the Hospital never explains where these revenues come from if not from its customers.

compare this subset of revenue, rendering illusory the customer mix test's requirement that a "share" of the revenue decline.[5]

The only way to reasonably interpret the customer mix test is that it requires the claims administrator to compare the claimant's "total revenue" with its subset of revenue "generated by customers located in" the affected areas and ask whether the latter—as a "share of the total"—declined 10 percent over the relevant period. There is simply no textual support for the Hospital's position that the revenue generated by customers in the affected areas must be compared to the "total revenue generated by customers" as opposed to the "total revenue" full stop. Accordingly, the appeal panel did not misinterpret the terms of the settlement agreement.

The tougher question is whether the claims administrator properly applied the customer mix test to the facts of the Hospital's claim. The Hospital argues, in essence, that the appeal panel should not have tried to compare its revenues reported on its P&Ls with the customer-specific revenues it provided to the claims administrator. The Hospital says the former was calculated on an accrual basis whereas the latter was calculated on a cash basis; thus, it is no surprise that different methods of accounting would produce different revenues. Accordingly, it says that—contrary to its normal practice—the claims administrator should not have looked to the revenues it reported in its P&Ls.

Whatever the merits of the Hospital's arguments, we conclude the district court properly exercised its discretion in denying review. As the Hospital itself argues, the Hospital's dilemma stems from its "unique"

---

[5] The Hospital's argument makes even less sense when applied to the part of the customer mix test dealing with nonlocal customers. In that recitation, the claimant must "demonstrate[] proof of a decline of 10% in the share of total revenue generated by non-local customers." This language does not contain the "revenue generated by customers" phrasing that the Hospital hangs its hat on.

accounting requirements. The Hospital's contention that the claims administrator should have deviated from its normal practice by analyzing the Hospital's customer-mix data independent of the revenues it reported on its P&Ls is thus the sort of "factbound attack on a decision about a single claimant" that the district court need not review. *Claimant ID 100217021 v. BP Expl. & Prod., Inc.*, 693 F. App'x 272, 275 (5th Cir. 2017) (per curiam) (unpublished). In the interest of judicial economy and fair and efficient administration of the settlement agreement, we will not require the district court to spend its limited time correcting all of the claims administrator's alleged accounting errors—at least not unless those errors represent "a recurring issue on which the Appeal Panels are split [and] 'the resolution of the question will substantially impact the administration of the Agreement.'" *Claimant ID 100212278*, 848 F.3d at 410 (quoting *In re Deepwater Horizon IV*, 632 F. App'x 199, 203-04 (5th Cir. 2015)). The Hospital points us to no other instance in which the claims administrator made a similar alleged error.

Accordingly, we AFFIRM.