# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 16, 2019

Lyle W. Cayce
Clerk

No. 18-30792
Summary Calendar

CLAIMANT ID 100303892,

      Requesting Party–Appellant,

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP, P.L.C.,

      Objecting Parties–Appellees.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-5088

---

Before DENNIS, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

      Claimant ID 100303892 (Claimant) appeals the district court's denial of Claimant's request for discretionary review of a decision by the Claims Administrator for the Deepwater Horizon Settlement Program. The Claims Administrator's decision did not misapply the Economic and Property Damages Class Action Settlement. We affirm.

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**I**

On April 20, 2010, an explosion on the *Deepwater Horizon*, a mobile offshore drilling unit leased by BP, resulted in the discharge of millions of gallons of oil into the Gulf of Mexico.[1]  BP entered into the Economic and Property Damages Class Action Settlement (Settlement Agreement) with a class of individuals and entities allegedly injured by the oil spill.  The Settlement Agreement created the Deepwater Horizon Settlement Program (Settlement Program) and imposed a June 8, 2015 deadline for the submission of claims for settlement benefits.  Claims for benefits are initially decided by the Claims Administrator, whose decisions can be appealed to an Appeal Panel.  The district court has discretion to review Appeal Panel decisions for compliance with the Settlement Agreement.[2]

Claimant operates several locations across Alabama, including Warehouse A and Warehouse B.  At the end of 2009, Claimant shifted "delivery volume" from Warehouse A to Warehouse B.  After the shift in delivery volume, Warehouse A remained open for customer pick-up business and continued to function as Claimant's administrative office.

Exhibit 5 of the Settlement Agreement deals specifically with "Multi-Facility Businesses," which it defines as "business entit[ies] that, during the period April 1, 2010 through December 31, 2010, maintained Facilities in more than one location and had at least one Facility within the Gulf Coast Areas."  Exhibit 5 defines a "Facility" as "[a] separate and distinct physical location of a Multi-Facility Business at which it performs or manages its operations."

---

[1] *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 418 (5th Cir. 2013).

[2] *See Claimant ID 100217021 v. BP Expl. & Prod., Inc.*, 693 F. App'x 272, 274 (5th Cir. 2017) (per curiam) (unpublished) (citing *In re Deepwater Horizon*, 641 F. App'x. 405, 408 (5th Cir. 2016)) ("The district court has discretion to review whether an appeals panel's decision was in compliance with the Settlement Agreement.").

Claims Administrator Policy 467, titled "The Definition of 'Facility,'" provides the following definition of a Facility: "(a) A separate and distinct physical structure or premises; (b) Owned, leased or operated by the Business Entity; (c) At which the Business Entity performs and/or manages its operations." Policy 467 explicitly states that "[a] warehouse owned, operated or leased by an Entity and used in the normal course of its operations will typically be considered a Facility." Policy 467 also includes a section titled "Change in Locations," which states that "[i]f a Business Entity has moved from one structure to another at any time during the Compensation Period, the Claims Administrator considers any and all evidence of the move provided by the claimant."

Exhibit 5 allows a Multi-Facility Business to file either "1) A claim for *each individual Facility* located in the Gulf Coast Areas that the Multi-Facility Business chooses to include in the claim, or 2) a consolidated claim on behalf of *all Facilities* located in the Gulf Coast Areas." Claimant filed separate claims for four of its locations. The claim at issue was filed for Warehouse A on April 2, 2015 (Warehouse A Claim). The Warehouse A Claim included information about Warehouse B because Claimant considers Warehouse A and Warehouse B to be part of the same "Distribution Center."

On January 20, 2016, the Claims Administrator awarded Claimant $8,485.18 on the Warehouse A Claim. The award did not include any compensation for Warehouse B. Claimant sought reconsideration of the award, contending that it should have included compensation for Warehouse B. The Claims Administrator denied Claimant's request for reconsideration. After noting that Claimant elected to file Facility-specific claims, the Claims Administrator determined that Warehouse A and Warehouse B qualified as separate Facilities and therefore could not be consolidated into a single claim.

3

The Claims Administrator subsequently reduced Claimant's award to $3,907.05 on grounds not relevant to this appeal.

Claimant appealed to an Appeal Panel, which affirmed the Claims Administrator's decision. The Appeal Panel explained that "Policy 467 considers each warehouse to be a Facility. Consequently, Claimant, who elected to file a separate claim for each Facility, should have filed a separate claim for [Warehouse B] rather than attempting to consolidate the revenue from both warehouses."

Claimant sought discretionary review in the district court, arguing that the Claims Administrator should have considered Warehouse A and Warehouse B as part of one combined claim and awarded Claimant $532,837. The district court denied Claimant's request for discretionary review without comment. Claimant appealed.

## II

We review the district court's denial of discretionary review for abuse of discretion.[3] As is relevant here, the district court abuses its discretion if it denies discretionary review of a Settlement Program decision that "actually contradicted or misapplied the Settlement Agreement, or had the clear potential to contradict or misapply the Settlement Agreement."[4] In determining whether a Settlement Program decision contradicted or misapplied the Settlement Agreement, we consider whether the decision is "incongruent with the language of the Settlement Agreement."[5]

## III

Claimant contends that the Claims Administrator misapplied the Settlement Agreement by (1) refusing to consider Warehouse B as part of the

---

[3] *Holmes Motors, Inc. v. BP Expl. & Prod., Inc.*, 829 F.3d 313, 315 (5th Cir. 2016).

[4] *Id.* (quoting *In re Deepwater Horizon*, 641 F. App'x at 409).

[5] *Claimant ID 100250022 v. BP Expl. & Prod., Inc.*, 847 F.3d 167, 170 (5th Cir. 2017).

Warehouse A Claim, (2) refusing to allow Claimant to amend the Warehouse A Claim to include a claim for Warehouse B, or (3) refusing to allow Claimant to submit a new claim for Warehouse B.

## A

The Claims Administrator did not misapply the Settlement Agreement by refusing to consider Warehouse A and Warehouse B as part of one combined claim. Claimant contends that the Claims Administrator should have considered Warehouse A and Warehouse B together because the transition of "many of [Claimant's] operations and sales volume" from Warehouse A to Warehouse B qualifies as a change in locations under Policy 467. Claimant's argument fails under the plain terms of Policy 467. Policy 467's provision on changes in locations applies "[i]f a *Business Entity* has moved from one structure to another." It does not apply every time a business entity moves an operation from one location to another. Accordingly, the transition of certain operations from Warehouse A to Warehouse B does not implicate Policy 467's provision on changes in locations. This conclusion is supported by the fact that Warehouse A continued to qualify as a "Facility" after the shift in delivery volume because Claimant continued to use Warehouse A for customer pick-up business and administrative tasks.

The application of the other provisions of Policy 467 to the Warehouse A Claim is equally straightforward. Claimant is a "Multi-Facility Business," as it "maintained Facilities in more than one location and had at least one Facility within the Gulf Coast Areas" between April 1, 2010 and December 31, 2010. As a result, Claimant was permitted to file either (1) a claim for *each individual Facility* in the Gulf Coast Areas for which it wanted to bring a claim or (2) a consolidated claim on behalf of *all of its Facilities* in the Gulf Coast Areas. Claimant chose to file separate claims for three of its individual Facilities as well as the Warehouse A Claim. Consequently, Claimant could

not consolidate multiple Facilities in the Warehouse A Claim. The Claims Administrator correctly declined to consider Warehouse B when deciding the Warehouse A Claim.

**B**

The Claims Administrator also did not misapply the Settlement Agreement by refusing to allow Claimant to amend the Warehouse A Claim to include "an independent claim related to [Warehouse B]." Claimant's proposed amended "claim" would include two "independent claim[s]," one for Warehouse A and one for Warehouse B. Policy 467 allows Multi-Facility Businesses like Claimant to file "a claim for each individual Facility." It does not allow Multi-Facility Businesses to file a claim that includes two "independent" claims for different Facilities.

**C**

Finally, the Claims Administrator did not misapply the Settlement Agreement by refusing to permit Claimant to file a separate claim for Warehouse B. Claimant contends that the Claims Administrator failed to comply with Section 4.3.7 of the Settlement Agreement by not giving Claimant the opportunity to file a separate claim for Warehouse B. Section 4.3.7 requires the Claims Administrator to "use its best efforts to provide Economic Class Members with assistance, information, opportunities and notice so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) *to which the Economic Class Member is entitled under the terms of the Agreement*."

Section 4.3.7 does not allow the Claims Administrator to disregard the other provisions of the Settlement Agreement, including the provision

establishing the deadline for submitting claims.[6] The Claims Administrator issued its initial decision on the Warehouse A Claim on January 20, 2016, well after the June 8, 2015 deadline for submitting claims. The Claims Administrator did not violate Section 4.3.7 by subsequently refusing to allow Claimant to file a claim for Warehouse B, as such a claim would have been filed after the deadline for submitting claims.

Nor did the Claims Administrator violate Section 4.3.7 by failing to inform Claimant about the issues with the Warehouse A Claim before the deadline for filing claims. Claimant filed the Warehouse A Claim on April 2, 2015, just over two months before the deadline. Assuming Section 4.3.7 imposes some sort of timeliness requirement on the Claims Administrator's review of a claim, the Claims Administrator did not violate that requirement by failing to review the Warehouse A Claim during the brief time between the date on which it was submitted and the deadline for filing claims.

*     *     *

The district court did not abuse its discretion when it denied Claimant's request for discretionary review. The judgment of the district court is AFFIRMED.

---

[6] *See In re Deepwater Horizon*, 641 F. App'x at 409 (concluding that the Claims Administrator did not violate the Settlement Agreement by refusing to allow the claimant to file a claim after the deadline for filing the claim at issue).