# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30173

United States Court of Appeals
Fifth Circuit

**FILED**
February 8, 2019

Lyle W. Cayce
Clerk

CLAIMANT ID 100261758,

Requesting Party - Appellant

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

Objecting Parties - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:17-CV-16287

Before DAVIS, JONES, and DENNIS, Circuit Judges.

PER CURIAM:*

This appeal involves a Business Economic Loss claim under the Deepwater Horizon Economic and Property Damages Settlement Agreement ("Settlement Agreement"). The claimant-appellant operates a furniture manufacturing business located in Corinth, Mississippi. Because of the claimant's location in the Zone farthest from the Gulf of Mexico, it is not

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

entitled to a presumption of causation under the Settlement Agreement but is required to satisfy one of the Settlement Agreement's tests for establishing causation. Under the test that the claimant selected, it was required to show a post-spill decline in the share of total revenue generated by customers located in certain geographical areas.

After reviewing the claimant's submissions, the Court Supervised Settlement Program's ("Settlement Program") Claims Administrator denied the claim. The claimant requested and obtained an explanation of the test results, then submitted new customer data. The Claims Administrator again reviewed the data and denied the claim. An administrative appeal panel rejected the claimant's request for a remand to allow it to cure the remaining problems with still more customer data, and the district court declined to exercise its discretionary review over that decision.

The claimant contends that the district court erred in denying review because the claim should have been remanded to allow the claimant to submit additional customer data. Appellees BP Exploration & Production, Inc., BP America Production Company, and BP, P.L.C. (collectively "BP") respond that the claimant has had ample opportunities to furnish necessary documents to support its claim. As discussed below, we conclude that the district court did not abuse its discretion in denying review. We therefore AFFIRM.

## I. BP Claim Appeal Process

In the wake of the April 2010 Deepwater Horizon[1] oil spill in the Gulf of Mexico, BP entered into the court-supervised Settlement Agreement with a class of plaintiffs who suffered economic and property damage because of the

---

[1] Prior decisions describe the Deepwater Horizon disaster and explain the origins of the Court Supervised Settlement Program and the Settlement Agreement. *See, e.g., In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mex., on Apr. 20, 2010,* 910 F. Supp. 2d 891 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon,* 739 F.3d 790 (5th Cir. 2014).

spill.[2]  Under the terms of the Settlement Agreement, a claimant submits its claim to the Claims Administrator, who determines the claim's validity.[3]  The claims administrator's decision is subject to review by an administrative appeal panel.[4]  A claimant who is unsatisfied with the appeal panel's decision may then request discretionary review by the federal district court supervising the Settlement Program.[5]  The claimant may appeal the district court's judgment to this court.[6]

## II.  BEL Causation Requirements and the Customer Mix Test

Under Exhibit 4B to the Settlement Agreement, the Causation Requirements for Businesses Economic Loss Claims ("Exhibit 4B"), business claimants that are not entitled to a presumption of causation must satisfy one of several tests to establish causation.[7]  The claimant in this case opted to pursue the Decline-Only Revenue Pattern, one of the tests available to Zone D[8] claimants.  Under this test, claimants must satisfy three requirements: 1) a decline of an aggregate of fifteen percent or more in total revenues over a period of three consecutive months in 2010, after the spill, compared to the same months in the pre-spill period selected by the claimant; 2) specific

---

[2] *See In re Deepwater Horizon*, 785 F.3d 986, 989 (5th Cir. 2015).

[3] *See id.*

[4] *See id.*

[5] *See id.* at 989-90.

[6] *Claimant ID 100196090 v. BP Expl. & Prod., Inc.*, No. 18-30137, 2018 WL 6600969, at *1 (5th Cir. Dec. 13, 2018) (per curiam); *see Rules Governing Discretionary Court Review of Appeal Determinations*, DEEPWATER HORIZON CLAIMS CENTER: ECONOMIC & PROPERTY DAMAGE CLAIMS, 6 (2015), http://www.deepwaterhorizoneconomicsettlement.com/docs/15643 -combined.pdf ("The only avenue for relief after Order and/or Judgment on Request for Discretionary Court Review is entered is appeal to the United States Court of Appeals for the Fifth Circuit.").  While our unpublished opinions are not controlling precedent, they may be persuasive authority.  *See Ballard v. Burton*, 444 F.3d 391, 401 & n.7 (5th Cir. 2006) (citation omitted).

[7] Economic and Property Damages Settlement Agreement, Causation Requirements for Businesses Economic Loss Claims (Exhibit 4B).

[8] Under the Settlement Agreement, Corinth is within Zone D, the farthest Zone from the Gulf of Mexico.

documentation identifying factors outside the claimant's control that prevented the recovery of revenues in 2011, such as the entry of a competitor; and 3) the Customer Mix Test, the requirement at issue in this appeal.[9]

Under the Customer Mix Test, claimants located in a Zone some distance from the Gulf can show causation by the oil spill if they can show they lost a specified amount of revenue from customers located near the Gulf. The test requires that claimants demonstrate proof of a decline of ten percent in the share of total revenue generated by either non-local customers[10] or customers located in Zones A, B, or C,[11] which are located closer to the Gulf of Mexico.[12] The decline must occur over the same time period used for analyzing total revenue decline: the three-month period in 2010, after the spill, compared to the three-month period in 2009, before the spill.[13] The claimant must submit business documentation reflecting customers' locations and sales associated with those customers,[14] and the Claims Administrator uses mapping software to verify each customer's Economic Loss Zone and distance from the claimant.[15]

The Claims Administrator's Approved Policy 345 governs the application of the Customer Mix Test.[16] It provides that Exhibit 4B places the burden on

---

[9] Economic and Property Damages Settlement Agreement, Causation Requirements for Businesses Economic Loss Claims (Exhibit 4B), at 7-9.

[10] Non-local customers are defined as those residing more than 60 miles from the claimant's business location. *Id.* at 8 n.19.

[11] This segment of customers can be used for business claimants, like the claimant in this case, with customers in those Zones. *Id.* at 8.

[12] *Id.* at 8-9.

[13] *Id.* at 7-8.

[14] *Id.* at 8-9.

[15] *Final Policy, Policy 345 v.3: Business Economic Loss Claims: Application of the Customer Mix Test* (2014), https://www2.deepwaterhorizoneconomicsettlement.com/un-secure/pkpolicysearch.aspx (search Policy ID field for "345"; then click "View"; then click "View").

[16] *Claims Administrator's Approved Policy 345 v3: Business Economic Loss Claims: Application of the Customer Mix Test*, DEEPWATER HORIZON CLAIMS CENTER: ECONOMIC & PROPERTY DAMAGE CLAIMS (2014), https://www2.deepwaterhorizoneconomicsettlement.com

the claimant to demonstrate that it has satisfied the requirements of the test.[17] The policy states that, though it may be difficult or even impossible for some claimants to satisfy this test, "the Claims Administrator interprets the Settlement Agreement's documentation requirements as mandatory," and the policy further notes that "[t]he Settlement Agreement does not grant the Claims Administrator discretion to waive these document requirements."[18]

Policy 345 also provides that if customer addresses cannot be verified by the Settlement Program, the Zone of such customers, and their distance from the claimant, will be considered "unknown."[19] The revenue generated from those "unknown" customers weighs against a claimant attempting to show the post-spill revenue decline required for the Customer Mix Test. More particularly, revenue from those customers is excluded from the revenue during the pre-spill period and included in the revenue during the post-spill period.[20] The district court supervising the Settlement Program has explained that the purpose of this unfavorable treatment is to prevent "claimants from benefitting from their failure to provide complete customer mix data."[21] A comment in the exhibit to Policy 345 states that when claimants fail the Customer Mix Test, "[a]dditional customer mix documentation is necessary to verify the customer address."[22]

---

/un-secure/pkpolicysearch.aspx (search Policy ID field for "345"; then click "Create PDF"); *Final Policy, Policy 345 v.3: Business Economic Loss Claims: Application of the Customer Mix Test*.

[17] *Final Policy, Policy 345 v.3: Business Economic Loss Claims: Application of the Customer Mix Test*, at 1.

[18] *Id.* at 2.

[19] *See id.* at 2-3.

[20] *See id.* at 3.

[21] *In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mex., on Apr. 20, 2010*, MDL No. 2179, slip op. at 4 (E.D. La. May 5, 2017), http://www.deepwaterhorizoneconomic settlement.com/docs/Discretionary_Review.pdf (navigate to page 442).

[22] *Final Policy, Policy 345 v.3: Business Economic Loss Claims: Application of the Customer Mix Test*, at 4.

## III. Incompleteness Process

The claimant relies on Claims Administrator's Approved Procedure 469, which describes the Settlement Program's obligation under the Settlement Agreement to facilitate class members' submission of claim forms and supporting documentation. This includes providing "assistance, information, opportunities and notice" to give class members the best opportunity to be deemed eligible for an award.[23] To that end, the procedure provides an Incompleteness Process, through which claimants who have not submitted documents necessary to completing their claim submissions are provided Incompleteness Notices before their claims are denied.[24] The procedure explains that the documents referenced in the notices are those without which "the Claims Administrator cannot process the claim any further."[25]

## IV. History of Appellant's Claim

The claimant-appellant in this case filed its Business Economic Loss claim in November 2013. In July and August 2016, the Settlement Program's accountant reviewer for the claim requested documentation identifying the claimant's customers' residences and the revenue amounts attributable to them. In August 2016, the claimant submitted its customer data. On September 23, 2016, the Claims Administrator issued a denial of the claim because of the claimant's inability to establish the Customer Mix Test. In its denial, the Claims Administrator included a spreadsheet highlighting

---

[23] *Claims Administrator's Approved Procedure 469 v2: All Claims: Processing Incomplete Claims*, DEEPWATER HORIZON CLAIMS CENTER: ECONOMIC & PROPERTY DAMAGE CLAIMS (2017), https://www2.deepwaterhorizoneconomicsettlement.com/un-secure/pkpolicysearch.aspx (search Policy ID field for "469"; then click "Create PDF"); *Final Procedure, Procedure 469 v.2: All Claims: Processing Incomplete Claims*, https://www2.deepwaterhorizoneconomicsettlement.com/un-secure/pkpolicysearch.aspx (search Policy ID field for "469"; then click "View"; then click "View").

[24] *Final Procedure, Procedure 469 v.2: All Claims: Processing Incomplete Claims*, at 1.

[25] *See id.* at 2.

customers whose addresses could not be verified. A few days after the denial notice was issued, the claimant requested an explanation of the customer mix results, and a Settlement Program analyst gave an oral explanation to the claimant's counsel in a conference telephone call.

On October 24, 2016, the claimant requested re-review.[26] Despite the requirement that claimants submit with a request for re-review any additional documentation for the Settlement Program's consideration, the claimant did not submit updated customer mix data with its request for re-review. Instead, it noted that it was "compiling complete and updated addresses which will be uploaded as soon as available."[27]

Nearly two months later, on December 19, 2016, the Claims Administrator, having received no new customer data, issued a Post-Re-Review Denial Notice. The claimant sought reconsideration[28] and submitted new customer data. The Claims Administrator issued a Post-Reconsideration Denial Notice in March 2017 following review of the updated customer data.

The claimant next appealed to the administrative appeal panel, seeking a remand to allow it to cure the remaining problems with the customer data. The appeal panel upheld the Claims Administrator's denial of the claim, reasoning that "[g]iven the multiple opportunities that have already taken place for Claimant to provide customer information, it is now too late to correct

---

[26] Re-Review by the Program is available to claimants who have additional documents to submit in support of their claims.

[27] The claimant argues that it had less opportunity to satisfy the Customer Mix Test than other claimants because it was not granted an extension of time to request re-review, so it "found itself in Re-Review before it could finish compiling and submitting information to satisfy the deficiencies noted in the initial Denial Notice." However, the claimant (1) does not claim to have formally requested an extension, as required by the Settlement Program; and (2) did not submit any data for the re-review process during the 56 days between its request for re-review and the Settlement Program's Post-Re-Review Denial Notice.

[28] Reconsideration by the Program is available to claimants who believe that the Program failed to take relevant information or data into account or failed to follow the Settlement Agreement's standards.

these submissions." The claimant requested discretionary review by the district court, which denied the request. The claimant timely filed this appeal challenging that judgment.

## V. Analysis

The claimant argues, first, that the Claims Administrator should have issued an Incompleteness Notice prior to denying the claim, and second, that the claim should have been remanded to allow the claimant another opportunity to cure remaining deficiencies in its customer mix data. This court reviews a district court's denial of discretionary review for abuse of discretion.[29] We find no abuse of discretion in the district court's judgment.

First, as to the claimant's argument that, under Policy 345, it was entitled to an Incompleteness Notice prior to the denial of its claim, we disagree and find that no such notice was required in this case.[30] We agree with BP's argument that the Incompleteness Process did not apply here because the claimant's submissions were not "incomplete." The claimant submitted all of the documents required to complete its claim submission, and the Claims Administrator did not require any additional documents to process the claim.[31] Rather, the Claims Administrator had all of the documents necessary to run the Customer Mix Test and process this claim, and the claimant's submitted data simply failed to meet the Settlement Agreement's requirements.

While it is true that the Settlement Program is obligated to provide assistance to claimants, the Settlement Program has done so in this case by (1) twice asking the claimant for customer data documentation before denying

---

[29] *Claimant ID 100212278 v. BP Expl. & Prod. Inc.*, 848 F.3d 407, 410 (5th Cir. 2017) (citation omitted).

[30] *Final Policy, Policy 345 v.3: Business Economic Loss Claims: Application of the Customer Mix Test*, at 4.

[31] *Final Procedure, Procedure 469 v.2: All Claims: Processing Incomplete Claims*, at 1-2.

the claim; and (2) accommodating the claimant's request for an explanation of the Customer Mix Test results. The Settlement Program's general obligation to assist claimants does not justify requiring an Incompleteness Notice when none is required under the terms of the specific applicable procedure. And this court has previously rejected the argument, asserted by the claimant here, that the denial of a claim is inconsistent with the Settlement Agreement's general "claimant-friendly" nature.[32] Therefore, we conclude that no Incompleteness Notice was required in this case.

Second, we reject the claimant's argument that its claim should have been remanded to allow it another opportunity to cure remaining deficiencies in its customer mix data. The claimant takes issue with the Claims Administrator's treatment of various customer addresses, including the assignment of "unknown" status to addresses that could not be verified by the Claims Administrator's mapping software and the rejection of customer addresses for which the claimant listed its own business address.

Based on our review of Exhibit 4B and Policy 345, it is clear that the Settlement Program adhered to the rules governing performance of the Customer Mix Test and processing of BEL claims. The Settlement Program's treatment of the customer addresses was proper because the claimant's submissions did not meet the Settlement Agreement's clear requirements, of which the claimant was (or should have been) aware from the outset.

Both Exhibit 4B and Policy 345 place the burden on the claimant to demonstrate that it has satisfied the requirements of the Customer Mix Test. The claimant was given multiple opportunities to address deficiencies in its

---

[32] *Claimant ID 100217021 v. BP Expl. & Prod., Inc.*, 693 F. App'x 272, 275-76 (5th Cir. 2017) (per curiam) ("[Claimant] cites various sections of the Settlement Agreement that it characterizes as 'claimant-friendly.' . . . [Claimant] herds the sections, identifies a common theme, and says the CSSP's denial of its claim is at odds with that theme. . . . [T]his does not meet our abuse of discretion metric.").

submissions and is not entitled to endless opportunities to do so.[33] We agree with the administrative appeal panel that no remand is warranted[34] because this claimant has already been given all of the chances to which it is entitled.[35]

We reject the claimant's assertion that the appeal panel decision in this case represents a split of authority with the appeal panel decisions cited by the claimant.[36] In those decisions, remand was warranted based on the facts and circumstances of those cases, including, in several cases, the Settlement Program's failure to provide any information to the claimant about customer mix issues or the Program's delayed provision of incorrect information.

Nor did the appeal panel decision in this case contradict or misapply the Settlement Agreement, or have the clear potential to do so.[37] Based on the facts of this case, the claimant was not entitled to an Incompleteness Notice or a remand for another opportunity to cure remaining customer data deficiencies. Accordingly, the district court did not abuse its discretion by denying this request for review, which "simply raise[d] the correctness of a discretionary administrative decision in the facts of a single claimant's case."[38]

---

[33] Under the circumstances of this case, we are unpersuaded by the claimant's assertion that it is entitled to an extra chance to cure deficiencies that were first raised at the reconsideration stage. The claimant did not take advantage of the opportunities it was previously given; it failed to submit any customer data during the re-review process.

[34] *See Claimant ID 100028922 v. BP Expl. & Prod., Inc.*, 710 F. App'x 184, 186-89 (5th Cir. 2017) (per curiam) (affirming denial of discretionary review where appeal panel declined to remand case because claimant was given opportunities to provide the missing Exhibit 4B documentation during the re-review and reconsideration processes).

[35] *See* Economic and Property Damages Settlement Agreement, ¶ 6 (providing for claims appeal process through reconsideration and appeal to appeal panel).

[36] *See Claimant ID 100212278*, 848 F.3d at 410 (quoting *In re Deepwater Horizon*, 632 F. App'x 199, 203-04 (5th Cir. 2015) (per curiam)).

[37] *Holmes Motors, Inc. v. BP Expl. & Prod., Inc.*, 829 F.3d 313, 315 (5th Cir. 2016) (quoting *In re Deepwater Horizon*, 641 F. App'x 405, 409-10 (5th Cir. 2016) (per curiam)).

[38] *Claimant ID 100212278*, 848 F.3d at 410 (quoting *In re Deepwater Horizon*, 641 F. App'x at 410).

## VI. Conclusion

For these reasons, we conclude that the district court did not abuse its discretion in denying review of this claim. Accordingly, we AFFIRM the district court's judgment.