# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

―――――――

No. 17-30949

―――――――

United States Court of Appeals
Fifth Circuit

**FILED**

November 9, 2018

Lyle W. Cayce
Clerk

BP EXPLORATION & PRODUCTION, INCORPORATED;
BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

Requesting Parties - Appellants

v.

CLAIMANT ID 100094497,

Objecting Party - Appellee

―――――――――――――――――

Appeal from the United States District Court
For the Eastern District of Louisiana

―――――――――――――――――

Before JONES, BARKSDALE, and WILLETT, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant BP unsuccessfully sought discretionary review of an Appeal Panel's calculation of lost profits owed to the Appellee under the Deepwater Horizon Economic and Property Damages Class Action Settlement Agreement ("E&P Settlement Agreement"). Because the Appeal Panels are split and this Appeal Panel misapplied the distinction between fixed and variable costs under the Business Economic Loss formula, the district court abused its discretion in failing to correct the significant legal error. We VACATE and REMAND for further proceedings consistent with this opinion.

## BACKGROUND

The E&P Settlement Agreement was negotiated between BP and various class action representatives in the aftermath of the 2010 *Deepwater Horizon* oil spill and provides compensation for claimants harmed by the spill. The Court Supervised Settlement Program ("CSSP") is responsible for administering and processing claims made under the Settlement Agreement. Accounting firms including Price Waterhouse Cooper perform the initial analysis to verify and compute the claims. The Appellee, Texas Gulf Seafood, Inc. ("Texas Gulf Seafood"), is a Texas corporation that serves as an intermediary for Texas gulf shrimpers, freezing and packing shrimp and arranging for delivery to wholesalers. Texas Gulf Seafood filed a Business Economic Loss ("BEL") claim with the CSSP on August 2, 2012.

BEL claims are calculated using a two-step process prescribed by Exhibit 4C of the Settlement Agreement. We describe the pertinent provisions here without recapitulating the complete, more complex formula contained in the Settlement Agreement. Step 1 Compensation focuses on the claimant's "reduction in profit between the 2010 Compensation Period" and a "Benchmark Period" of comparable months before the spill. Step 2 Compensation provides for incremental profits a claimant might have generated in the period after the *Deepwater Horizon* spill if the incident had never occurred.

Variable Profit is central to calculating damages in a BEL Claim. Step 1 Compensation is determined by calculating "the difference in Variable Profit between the 2010 Compensation Period selected by the claimant and the Variable Profit over the comparable months of the Benchmark Period." Variable Profit, in turn, is defined as the sum of monthly revenue over the Benchmark Period minus variable costs identified in Exhibit 4D, among others. Thus, whether a cost is defined as "variable" (and factored into

Variable Profit calculations) or "fixed" (and excluded from such calculations) can significantly alter the size of an award.

Exhibit 4D of the Settlement Agreement contains a detailed list of costs stipulated by the parties to be "variable" or "fixed." Contract labor, consumable goods, freight, and fuel are among the items defined as "variable expenses," for example. *Id.* "Fixed" expenses include, inter alia, internet fees, postage, and uniforms. Notably, for purposes of this dispute supplies are deemed "fixed." *Id.*

The CSSP initially calculated a base compensation amount of $322,459.22 for Texas Gulf Seafood, resulting in a total award of $1.33 million.[1] Before generating this award, CSSP asked Texas Gulf Seafood to explain the large "supplies" category listed on the profits and loss statement the company submitted with its claim. Texas Gulf Seafood responded that the "supplies" in this case included "items which are used to unload, process, and package shrimp, such as packing bags and other materials." CSSP disagreed with Texas Gulf Seafood's classification of those materials as "fixed" and concluded that, because the expenses fluctuated based on the amount of shrimp the company shipped, the costs "appear[ed] to be more in line with consumable goods" than "supplies." The claims administrators therefore re-categorized Texas Gulf Seafood's expenses as "variable" rather than "fixed" and calculated Texas Gulf Seafood's award accordingly.

Texas Gulf Seafood sought reconsideration of the award, based on its assertion that the "supplies" line item referenced more than just "packing bags and other materials." Upon review, CSSP found that Texas Gulf Seafood's "supplies" consisted primarily of "consumable goods" and recalculated the

---

[1] The first award was remanded for reconsideration in light of an intervening Fifth Circuit decision, *In re Deepwater Horizon II,* 744 F.3d 370, 378 (5th Cir. 2014), but it is unnecessary to repeat the entire procedural history here.

award, increasing it slightly from $1.33 million to $1.34 million. Texas Gulf Seafood asked CSSP to visit the matter a third time, but CSSP declined.

Still dissatisfied, Texas Gulf Seafood appealed its CSSP award to an Appeal Panel, which, under the Settlement Agreement, reviews CSSP awards *de novo*. Texas Gulf Seafood argued that CSSP should have deferred to its business judgment when it categorized the costs as "supplies," or alternatively, that CSSP should have categorized some of the costs as fixed and some as variable. Texas Gulf Seafood proposed a base compensation award of $640,124.47. The Appeal Panel agreed with Texas Gulf Seafood, reversed the CSSP award, and granted Texas Gulf Seafood its requested base compensation of $640,124.47, nearly doubling the total award to $2.56 million. The Appeal Panel determined that only 31-45% of the "supplies" category related to the cost of goods sold cited by CSSP when it reclassified the materials. Therefore, Texas Gulf Seafood had a "rational basis" for classifying the costs the way it did and CSSP had "insufficient ground[s]" for reclassifying them.

BP sought discretionary review of the Appeal Panel's decision by the district court, but the district court denied the request. BP now appeals this denial.

## STANDARD OF REVIEW

This court reviews a district court's denial of discretionary review for abuse of discretion. *See Claimant ID 100212278 v. BP Expl. & Prod. Inc.*, 848 F.3d 407, 410 (5th Cir. 2017). A district court abuses its discretion if an Appeal Panel decision not reviewed by the district court contradicted or misapplied the Settlement Agreement, or had the clear potential to contradict or misapply the Settlement Agreement. *Holmes Motors v. BP Expl. & Prod., Inc.*, 829 F.3d 313, 315 (5th Cir. 2016) (internal citation omitted). A district court also abuses its discretion if it denies a request for review that "raises a recurring issue on which the Appeal Panels are split if 'the resolution of the

question will substantially impact the administration of the Agreement.'" *Claimant ID 100212278*, 848 F.3d at 410 (quoting *In re Deepwater Horizon*, 632 F. App'x 199, 203-04 (5th Cir. 2015)). Nevertheless, the district court need not grant review of all claims that raise questions about the proper interpretation of the Settlement Agreement and does not abuse its discretion if it denies a request for review that "involve[s] no pressing question of how the Settlement Agreement should be interpreted and implemented, but simply raise[s] the correctness of a discretionary administrative decision in the facts of a single claimant's case." *Id.* (quoting *In re Deepwater Horizon*, 641 F. App'x 405, 410 (5th Cir. 2016)); *Holmes*, 829 F.3d at 316.

## DISCUSSION

Texas Gulf Seafood characterizes this case as a garden-variety factual dispute among several hundred thousand claims processed under this Settlement Agreement. But the issue raised by BP implicates the core of the Settlement Agreement. This court must determine whether the Settlement Agreement allows Appeal Panels to classify expenses as "fixed" or "variable" based on the way claimants label the expenses in documents supporting their losses, or whether it requires Appeal Panels to use independent judgment to classify expenses according to their substantive nature. Texas Gulf Seafood argues for the former approach, while BP urges the latter.

The Settlement Agreement must "be interpreted in accordance with General Maritime Law," rather than state law. *See In re Deepwater Horizon*, 785 F.3d 986, 994 (5th Cir. 2015) (quoting Settlement Agreement 36.1); *Int'l Marine, L.L.C. v. Delta Towing, L.L.C.*, 704 F.3d 350, 354 (5th Cir. 2013). A settlement agreement "is a contract." *E.E.O.C. v. Exxon Corp.*, 202 F.3d 755, 757 (5th Cir. 2000) (internal quotation marks omitted). Under admiralty law, contracts "should be read as a whole and [their] words given their plain meaning unless the provision is ambiguous." *Breaux v. Halliburton Energy*

*Servs.*, 562 F.3d 358, 364 (5th Cir. 2009) (quotation marks and citation omitted).

Here, the parties disagree about the correct process for classifying expenses as "fixed" or "variable" under the Settlement Agreement. BP asserts that "[t]he only reasonable interpretation of [Exhibit 4D's list of classifications] is that expenses must be classified as fixed or variable according to their nature." Under this interpretation, Texas Gulf Seafood's use of packing and shipping materials, labels, and carbon dioxide are properly categorized as variable expenses because they "all vary in proportion to the amount of shrimp processed by the company . . . ." Texas Gulf Seafood responds that the proper approach, followed by the Appeals Panel in this case, is to evaluate the claimants' own categorization of their expenses under a "rational basis" standard and then "appl[y] the Settlement Agreement as written."

When the expense category provided by a claimant contains a mix of variable costs and fixed costs, claims administrators have previously held that "[i]f an expense does not fit the description of the [v]ariable or [f]ixed expense categories in Exhibit 4D [], the [CSSP] will use discretion to apply the classification that best conforms to delineations made by the Parties . . . ." They have also recognized situations in which the CSSP "must make a determination whether an expense which Claimant labels as 'Supplies' is better classified as some other type of expense (such as variable cost of goods sold or consumable goods)." Further, when a party "uses a description that does not fit the actual expense, the description should be re-defined more accurately and a determination made based on what category most closely approximates that determination." *Id.* In other words, "[i]t is [the] duty [of] panelists to look beyond mere labelling of an item to discern in a *de novo* review whether it truly conforms to its label." 21 A.P.D 2015-1152.

Both parties agree that the list of expenses in the "supplies" category of Texas Gulf Seafood's original profit and loss statements and tax returns was only partially accurate, because variable expenses, *i.e.*, costs that varied directly with the amount of shrimp handled by the company, comprised approximately 40% of the costs that Texas Gulf Seafood initially categorized as "fixed." Despite admitting that its initial classification was inaccurate, however, Texas Gulf Seafood argues for a claims regime that essentially takes claimants at their word and classifies items as they request. BP correctly notes that adopting such an approach would lead to "absurd results," in which the CSSP could find itself "classify[ing] identical costs enumerated in Exhibit 4D as fixed [in one claim and] variable" in another, depending on each claimant's choice.

In short, Texas Gulf Seafood wants the claims process to resemble a blank check that claimants fill out, panelists rubber stamp, and BP pays. That is not the arrangement prescribed in the Settlement Agreement. The Agreement provides for accountants from Price Waterhouse Cooper and other firms to review claims and supporting documents and determine an appropriate level of compensation for the claimants. The parties would not have authorized accounting experts to review claims if they intended Appeal Panels simply to defer to claimants' descriptions. This structure is inconsistent with the permissive standard urged by Texas Gulf Seafood and applied by the Appeal Panel in this case.

As the Appellee acknowledges, "the Exhibit 4D expense classifications were the subject of intense and protracted negotiations by the parties, are tantamount to a stipulation and may not be lightly disregarded" because they are "binding upon the Settlement Program." Exhibit 4D characterizes forty-six separate types of expenses as "fixed" or "variable" (twenty-nine types of fixed expenses and seventeen types of variable expenses). It distinguishes, for

instance, between "maintenance" (a fixed cost) and "repairs (excluding maintenance)" (a variable cost), and between "supplies" (fixed cost) and "[cost of goods sold]" and "consumable goods" (both variable costs). These distinctions utilize the customary understanding of cost allocation in the accounting business.[2] The parties' attention to detail evinces a common understanding that the substantive nature of claimants' expenses is critical to determining a fair settlement. Exhibit 4D of the Settlement Agreement represents a categorical approach that is inconsistent with the approach advocated by Texas Gulf Seafood.

Texas Gulf Seafood asserts repeatedly that the Appeal Panels have used a rational basis test for evaluating claimants' classifications but cites no case using that language other than the case below. BP locates one other panel decision that takes the approach urged by Texas Gulf Seafood, *Claim Number 303174*. In that instance, an Appeal Panel ignored evidence that "Auto Expenses" listed as "fixed" by the claimant likely referenced mileage or fuel and should have been classified as "variable" instead. For that panel, the fact that the claimant described the expense as "fixed" was evidence enough that it was indeed fixed. The decision in *Claim Number 303174*, however, does not help Texas Gulf Seafood. That another Appeal Panel also deferred to the claimant's classification under the Settlement Agreement proves only that more than one panel has misapplied the Agreement and reinforces the need to clarify the proper standard for evaluating claimants' listed expenses.

---

[2] A "variable cost" is a business expense that "will vary in direct proportion to changes in the level of [a business] activity. For example, direct material, direct labor, sales commissions, fuel cost for a trucking company, and so on, may be expected to increase with each additional unit of output. . . . The opposite of variable costs are fixed costs. Fixed costs do not fluctuate with changes in the level of activity." LARRY WALTHER & CHRISTOPHER SKOUSEN, MANAGERIAL AND COST ACCOUNTING 37-38 (2009).

Thus, this court holds that the Settlement Agreement requires claims administrators to use their independent judgment and classify expenses as "fixed" or "variable" according to their substantive nature, rather than rational basis review of the claimants' own descriptions. Appeal Panels, too, are bound by the substantive nature of the expense claims under the Settlement Agreement rather than the claimants' inaccurate characterizations.

As applied here, Attachment A's categorical list of fixed and variable costs may require that some costs be allocated according to their substantive nature. For instance, the distinction accepted by the parties is that somewhere between 30-40% of Texas Gulf Seafood's claimed fixed cost "supplies" related to shrimp packaging and freezing costs that are actually variable with its product output ("consumable supplies"). Whether the evaluative process is denominated allocation or reclassification, these costs should be placed in substantively correct categories.

## CONCLUSION

Because the Appeal Panel here misapplied Exhibits 4C and 4D and Attachment A to 4D of the Settlement Agreement, and the district court erred in failing to review and correct this error of law, we **VACATE** the award and **REMAND** for further proceedings consistent with this opinion.

RHESA HAWKINS BARKSDALE, Circuit Judge, dissenting in part:

I concur, *dubitante*, in holding the district court abused its discretion by not reviewing the appeal-panel's decision. But, in the many iterations of the Deepwater Horizon settlement-agreement litigation, our case law does not accord with the majority's decision to rule on the underlying legal issue, rather than reverse and remand, in the absence of *any* district-court decision on the merits of that issue. Nor is the issue a difference between questions of law and fact.

Here, our review is simply of the district court's decision not to review the appeal-panel's decision—a procedural issue involving abuse, *vel non*, of discretion. Moreover, it is well-settled "that [generally] a federal appellate court does not consider an issue not passed upon below". *Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *see also Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017). Accordingly, I must respectfully dissent in part.

In the vast majority of these actions, our court has affirmed the denial of discretionary review; but, in a few instances, our court has remanded to the district court for both a more complete factual record and a decision on the contract-interpretation issue. "Contract interpretation, such as the meaning of the Settlement Agreement, is a question of law." *In re Deepwater Horizon*, 732 F.3d 326, 345 (5th Cir. 2013) (citation omitted). If questions of law are at issue, the district court should first decide them, followed by our reviewing those decisions *de novo*. *BP Expl. & Prod., Inc. v. Claimant ID 100169608*, 682 F. App'x 256, 259 (5th Cir. 2017) (reviewing legal question of contract interpretation "effectively de novo", where district court granted discretionary review and decided issue); *Claimant ID 100197593 v. BP Expl. & Prod., Inc.*, 666 F. App'x 358, 360 (5th Cir. 2016) (same); *see also Claimant ID 100217021 v. BP Expl. & Prod., Inc.*, 693 F. App'x 272, 274 (5th Cir. 2017) (district court

reviews compliance with settlement agreement; our court reviews denial of discretionary review); *Claimant ID 100226366 v. BP Expl. & Prod., Inc.*, 671 F. App'x 940, 941 (5th Cir. 2016) ("It is only when the district court abuses its discretion that we will remand to require the court to review what the plan administrators have done." (citation omitted)).

Contrary to the majority's reviewing on the merits, our court has held a district court should have reviewed a decision by the appeal-panel, and remanded to the district court for review of a purely legal issue. *In re Deepwater Horizon*, 632 F. App'x 199, 204 (5th Cir. 2015). Our court held: appeal-panels were split over the interpretation of the settlement agreement; therefore, the district court abused its discretion in denying review; "the question of contract interpretation presented . . . would be best addressed first by the district court charged with administering the Agreement"; and, again, "the district court should have granted discretionary review to address this question". *Id.* On remand, the district court interpreted the settlement agreement; and, in the second appeal, our court addressed that interpretation, because the district court had the opportunity to decide the legal issue in the first instance. *In re Deepwater Horizon*, 864 F.3d 360, 363 (5th Cir. 2017) That should be the procedure for the appeal at hand.

The majority decides an underlying issue of law in the absence of a district-court decision on that issue; instead, it merely exercised its considerable discretion and decided *not* to review. In my view, in this instance, the extent of our prudential power is only to instruct the district court to undertake such review.

For these reasons, I respectfully dissent in part.

11