# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30844
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

March 28, 2019

Lyle W. Cayce
Clerk

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

      Requesting Parties – Appellants,

v.

CLAIMANT ID 100261922,

      Objecting Party – Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before HIGGINBOTHAM, ELROD, and DUNCAN, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

In this *Deepwater Horizon* appeal, BP challenges the $2 million award Claimant received pursuant to the Economic and Property Damages Settlement (Settlement Agreement). Because the district court properly denied discretionary review, we AFFIRM.

I.

Claimant, an Alabama-based manufacturer of commercial signs, submitted a claim to the Settlement Program in November 2013. While processing the claim, the Claims Administrator requested additional information from Claimant on several occasions, including information

pertaining to a $900,000 "Research & Development" expense that Claimant classified as a "variable" cost on its profit and loss statements. Claimant complied, explaining the purpose of the R&D effort and listing the types of costs included, and provided a month-by-month breakout demonstrating that the costs had been incurred periodically between February 2010 and June 2011.

During this exchange, the Claims Administrator rejected Claimant's claim twice, and Claimant requested re-review each time. In its explanation of the second denial, the Claims Administrator noted that it had adjusted Claimant's accounting data to record the R&D costs in the months in which they were incurred rather than as a lump sum in June 2011. Finally, after a third review of the claim, the Claims Administrator determined that Claimant was entitled to approximately $2 million under the Settlement Agreement. This time, the Claims Administrator's analysis did not include the adjustments to the R&D expense.

BP appealed the award to an Appeal Panel on three grounds: (1) Claimant's attestation on its claim form that the oil spill caused its losses was implausible; (2) the Claims Administrator improperly characterized the R&D expense as "variable" rather than "fixed"; and (3) the Claims Administrator erroneously omitted its adjustments that "matched" the R&D costs to the months in which they were incurred.[1] The Appeal Panel declined to consider the attestation issue but noted that it was preserved for further review. On the fixed vs. variable costs issue, the Appeal Panel affirmed the Claims Administrator's classification of the R&D expense as a variable cost. Finally, turning to the matching issue, the Appeal Panel found the issue

---

[1] BP raised a fourth argument regarding whether Claimant qualifies as a defense contractor under the Settlement Agreement, but "appellate counsel has chosen not to renew that argument" before this court."

No. 18-30844

mooted because, even if it was error to omit the R&D expense adjustments, the correct value would be closer to the $2 million award amount than BP's final proposal of $0. Thus, the Appeal Panel denied the appeal.

BP next sought discretionary review in the district court, raising the same issues it raised before the Appeal Panel. The district court denied review in June 2018, and BP now appeals.

## II.

This court reviews the district court's denial of discretionary review for an abuse of discretion. *Holmes Motors, Inc. v. BP Expl. & Prod., Inc.*, 829 F.3d 313, 315 (5th Cir. 2016). The district court abuses its discretion if it declines to review a decision that "actually contradicted or misapplied the Settlement Agreement, or had the clear potential to contradict or misapply the Settlement Agreement." *Id.* (quoting *In re Deepwater Horizon*, 641 F. App'x 405, 409–10 (5th Cir. 2016)). It is also an abuse of discretion to deny a request for review that "raises a recurring issue on which the Appeal Panels are split if 'the resolution of the question will substantially impact the administration of the Agreement.'" *BP Expl. & Prod., Inc. v. Claimant ID 100094497*, 910 F.3d 797, 800 (5th Cir. 2018) (*Texas Gulf Seafood*) (quoting *Claimant ID 100212278 v. BP Expl. & Prod., Inc.*, 848 F.3d 407, 410 (5th Cir. 2017)). In contrast, the district court does not abuse its discretion if it denies a request for review that "involve[s] no pressing question of how the Settlement Agreement should be interpreted and implemented, but simply raise[s] the correctness of a discretionary administrative decision in the facts of a single claimant's case." *Id.* (alterations in original) (quoting *Claimant ID 100212278*, 848 F.3d at 410).

## III.

BP contends that the district court abused its discretion because the Claims Administrator: (1) failed to investigate Claimant's implausible attestation that the oil spill caused its losses; (2) improperly classified

3

No. 18-30844

Claimant's R&D expense as variable rather than fixed; and (3) erred by omitting its previous matching adjustments to the R&D expense.

A.

BP's attestation argument is familiar—BP has raised the same issue in several other appeals currently pending in this court. Here, BP argues that "[t]here is no logical connection" between Claimant's sign manufacturing business and the oil spill, so the Appeal Panel should have remanded the claim to the Claims Administrator for "further investigation."

Although our opinion in *Deepwater Horizon III* forecloses any categorical duty on the part of the Claims Administrator "to ensure that implausible claims are adequately scrutinized," BP is correct that that opinion also acknowledges that "[s]uspicious forms [will] be subject to investigation" and suggests that the Claims Administrator should "resolve real examples of implausible claims" as they arise during the claims process. *In re Deepwater Horizon*, 744 F.3d 370, 377–78 (5th Cir. 2014) (*Deepwater Horizon III*). However, the only argument BP offers to demonstrate that Claimant's attestation is implausible is that "[it is] not clear how the fortunes of a sign manufacturer 160 miles inland were tied to an oil spill." BP does not identify any other possible causes of Claimant's loss, nor does it rely on any evidence or authority to demonstrate that Claimant's losses could not have been caused at least in part by the *Deepwater Horizon* disaster. Accordingly, BP has not established that Claimant's causation attestation is implausible.[2] The district court therefore properly denied discretionary review.

---

[2] Even if BP had made such a showing, the Claims Administrator appears to have closely scrutinized the causation issue in its review of the claim: the Claims Administrator twice requested additional documentation demonstrating that Claimant's losses were caused by the spill.

No. 18-30844

B.

Regarding the fixed vs. variable costs issue, BP insists that classifying Claimant's R&D expense as variable artificially inflated Claimant's award. Conceding that R&D costs are not on the list of fixed and variable expenses in Exhibit 4D, BP nonetheless insists that the Claims Administrator's classification violated the Settlement Agreement. BP further suggests that the Claims Administrator did not make "any reasoned choice" on the R&D expense because it simply "did not notice [Claimant's] wrong classification." According to BP, the Appeal Panel erred by declining to correct this omission and instead deferring to the Claims Administrator's classification.

Our recent opinion in *Texas Gulf Seafood* clarified the proper approach for Claims Administrators and Appeal Panels in classifying a claimant's expenses as fixed or variable. There, resolving an Appeal Panel split, we held that "the Settlement Agreement requires claims administrators to use their independent judgment and classify expenses as 'fixed' or 'variable' according to their substantive nature, rather than rational basis review of the claimants' own descriptions." *Texas Gulf Seafood*, 910 F.3d at 802. We further held that "Appeal Panels, too, are bound by the substantive nature of the expense claims under the Settlement Agreement rather than the claimants' inaccurate characterizations." *Id.* Because the Appeal Panel had deferred to the claimant's "rational basis" for classifying certain expenses as "supplies"—a category listed as a fixed cost in Exhibit 4D—we vacated the award and remanded for proper classification of the expenses. *Id.* at 800, 803.

Although the Claims Administrator and Appeal Panel in this case did not have the benefit of *Texas Gulf Seafood* when they reviewed Claimant's claim, we believe their analyses comport with our holdings in that case. We note first that this is not a case in which the Claims Administrator applied a particular classification simply because the label the Claimant assigned to that

5

expense was included on one of the lists in Exhibit 4D.  *Cf. BP Expl. & Prod., Inc. v. Claimant ID 100185315*, 2019 WL 597598, at *2 (5th Cir. Feb. 8, 2019) (vacating and remanding where Appeal Panel "agreed with the claimant's argument that its Management Fee expense was properly classified as a fixed cost because 'fees' are included as a fixed cost in [Exhibit 4D]").  As BP admits, R&D expenses are not listed on Exhibit 4D, so the Claims Administrator had to follow Policy 361 and "use discretion to apply the classification that best conform[ed] to delineations made by the Parties."  The record indicates that the Claims Administrator did so—it requested additional information from Claimant about the R&D expense, including the "nature of the expenses recorded," and Claimant responded with a substantive description.  Engaging in this kind of independent analysis is all that *Texas Gulf Seafood* requires.

While BP complains that the Appeal Panel applied an abuse of discretion standard in reviewing the Claims Administrator's classification, the Appeal Panel expressly considered the substantive nature of the R&D expense.  It first listed the purpose of the expense and the types of costs included.  Then, it explained the basis for its conclusion that the Claims Administrator's variable classification was correct: "[T]he expenses involved are those relating to the development of operational aspects of 'the sign,' i.e. a particular project."  Importantly, the Appeal Panel did not merely defer to the label that Claimant assigned to the expense.  Thus, on this record, we cannot conclude that the Appeal Panel's analysis ran afoul of *Texas Gulf Seafood*.

BP makes much of its argument that, regardless of the analyses undertaken by the Claims Administrator and Appeal Panel, applying a variable classification to the R&D expense was substantively inaccurate.  Even if this were true, it "simply raise[s] the correctness of a discretionary administrative decision in the facts of a single claimant's case" and therefore does not warrant discretionary review.  *Texas Gulf Seafood*, 910 F.3d at 800

(alteration in original).   The district court did not abuse its discretion in denying review on this issue.

## C.

In its third issue, BP complains that the Claims Administrator's "inexplicable deletion" of the matching adjustments it had previously made to the R&D expense resulted in a larger award than Claimant was entitled to under the Settlement Agreement.   But in its calculation notes in support of Claimant's award, the Claims Administrator confirmed that its review had been conducted according to this court's and the district court's instructions regarding matching under Policy 495.   In any event, even if the Claims Administrator erred in omitting the adjustments, the error bears only on the processing of Claimant's claim and does not "raise[] a recurring issue on which the Appeal Panels are split" or "involve [a] pressing question of how the Settlement Agreement should be interpreted."   *Id.*   As a result, the district court did not err in declining to grant discretionary review.

## IV.

For the reasons described, BP has not demonstrated that discretionary review was appropriate in this case.   We therefore AFFIRM the district court's judgment.