# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
April 2, 2019

Lyle W. Cayce
Clerk

No. 18-30337

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP, P.L.C.,

Requesting Parties - Appellants

v.

CLAIMANT ID 100317640,

Objecting Party - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-1007

Before STEWART, Chief Judge, SOUTHWICK and ENGELHARDT, Circuit
Judges.

PER CURIAM:*

The claimant in this *Deepwater Horizon* Settlement Program appeal was
awarded over a million dollars for its business losses from operations at two
restaurants in Florida. BP appeals from the district court's refusal to grant

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 18-30337

discretionary review to consider arguments regarding the calculations of loss. We find no abuse of discretion and AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

In response to the 2010 *Deepwater Horizon* disaster in the Gulf of Mexico, an Economic and Property Damages Class Action Settlement Agreement was negotiated between BP and class action representatives.  The Settlement Agreement permits individuals and entities that experienced spill-related economic and property damage to recover from BP through a Court Supervised Settlement Program.  Business Economic Loss claims are calculated under the Settlement Agreement by comparing the "actual profit of a business during a defined post-spill period in 2010 to the profit that the claimant might have expected to earn in the comparable post-spill period of 2010."

Compensation for Business Economic Loss claims is calculated in two steps.  The first step in the calculation is to determine "the difference in Variable Profit between the 2010 Compensation Period selected by the claimant and the Variable Profit over the comparable months of the Benchmark Period."  Variable profit is defined as the sum of the monthly revenue over the relevant period minus the corresponding variable expenses over that same period.  Variable profit is calculated for both the Compensation Period and the Benchmark Period.  Expenses are either fixed or variable.

The second step of the calculation "is intended to compensate claimants for incremental profits the claimant might have been expected to generate in 2010 in the absence of the spill, based on the claimant's growth in revenue in January-April 2010 relative to the claimant-selected Benchmark Period." Once the compensation under each step is determined, the two figures are added together, then multiplied by a risk transfer premium to determine a total award.

No. 18-30337

The first-level determination on a claim under the Settlement Program is by the Claims Administrator. The claimant here was awarded $1,309,392.11 for losses at two Florida restaurants. BP disputed the award and sought review by an Appeal Panel. BP argued that the Claims Administrator failed to investigate certain expense line items and misclassified repair costs as entirely variable instead of as 50% fixed, which had the effect here of increasing the claimant's award. BP also argued that the Claims Administrator failed to reconcile differences between the claimant's profit and loss statements ("P&Ls") and its tax returns with respect to the claimant's "supplies' expenses." BP claimed that the difference between the P&Ls and the tax returns may have inflated the award to the claimant by more than $100,000.

The Appeal Panel effectively affirmed the Claims Administrator's award, concluding there was no error in the reconciliation of the P&Ls and tax returns. As to BP's claim that the Claims Administrator incorrectly found expense line items to be 100% variable, rather than 50% fixed, the Appeal Panel found that "BP may have a valid point," but the number submitted by the claimant (which was the number calculated by the Claims Administrator) was closer to the proper result than BP's submission, and adopted the claimant's proposed award. The importance of the finding that one party's estimate is closer than the other's is that an Appeal Panel is to choose the party's Final Proposal that is closest to the best result, even if incorrect, instead of remanding the case.

BP then sought discretionary review in the district court, which refused to take the appeal. BP then appealed here.

## DISCUSSION

When the district court refuses to exercise its discretion under the *Deepwater Horizon* Settlement Program to review an Appeal Panel decision,

we review the refusal for abuse of discretion. *Holmes Motors, Inc. v. BP Expl. & Prod., Inc.*, 829 F.3d 313, 315 (5th Cir. 2016).  We have identified two situations in which a declination may be an abuse of discretion.  One is when the panel decision "actually contradicted or misapplied the Settlement Agreement, or had the clear potential to contradict or misapply the Settlement Agreement." *Id.* (quoting *In re Deepwater Horizon*, 641 F. App'x 405, 409-10 (5th Cir. 2016)).  The other is when the decision "raises a recurring issue on which the Appeal Panels are split" and "the resolution of the question will substantially impact the administration of the Agreement." *Claimant ID 100212278 v. BP Expl. & Prod., Inc.*, 848 F.3d 407, 410 (5th Cir. 2017) (quoting *In re Deepwater Horizon*, 632 F. App'x 199, 203-04 (5th Cir. 2015)).

BP argues that the district court should have reviewed the award for two reasons: (1) certain of the claimant's costs were classified as entirely variable when the Settlement Agreement requires those accounts to be classified as 50% fixed and 50% variable; and (2) discrepancies should have been resolved between certain of the claimant's supplies costs in its P&Ls and tax returns.

*I. Fixed and variable expenses*

As to BP's first argument, Exhibit 4D to the Settlement Agreement provides that when a claimant's books and records do not separately identify repair and maintenance costs, the costs are to be allocated 50% to fixed costs and 50% to variable costs.  Only variable costs are subtracted from revenue for purposes of calculating variable profit under the Business Economic Loss framework.  That means that increasing the amount of variable costs within the Compensation Period increased the award to the claimant.  BP argues that although the claimant did not separately identify repair and maintenance costs — compelling the Program to allocate those costs to 50% variable and 50% fixed — the repair and maintenance costs were errantly allocated entirely to

4

variable expenses, which inflated the award. BP claims this was a clear misapplication of the Settlement Agreement necessitating district court review.

Determining whether any such error required district court review starts with the Rules Governing the Appeals Process. In appeals in which the issue is the compensation amount, the Appeal Panel is limited to selecting either the claimant's or BP's Final Proposal, a choice labeled as a "baseball appeal." *See In re Deepwater Horizon*, 785 F.3d 986, 989 n.1 (5th Cir. 2015). Pursuant to Rule 17(d)(5), the Appeal Panel "may remand an Appeal only if it finds" that a document introduced on appeal changes the outcome of the claim to an amount not proposed by the claimant or BP or if the information in the record is not sufficient to support either Final Proposal. Here, the Appeal Panel noted that "BP may have a valid point with regard to the repairs expense," yet declined to order a remand for correction. Instead, the Appeal Panel found that the claimant's proposal was "closer to the correct result" and chose that figure.

The Appeal Panel followed the terms of the settlement. After acknowledging that the Claims Administrator may have erred in applying the directive on allocating expenses, the Appeal Panel adopted the claimant's Final Proposal as being closer to a correct amount than BP's proposal. The district court did not abuse its discretion in refusing to grant review because it could have reasonably concluded that this decision raised issues applicable only to a single claimant's case. *See BP Expl. & Prod., Inc. v. Claimant ID 100094497* (*Texas Gulf Seafood*), 910 F.3d 797, 800 (5th Cir. 2018).

BP argues that *Texas Gulf Seafood* actually supports its challenge here. That Appeal Panel had agreed with the claimant that the Claims Administrator should accept the claimant's classification of expenses so long as there was a rational basis for the claimant to classify the expenses in the manner it did. *Id.* We disagreed because such a ruling ignored the terms of

the Settlement Agreement. *Id.* at 801-02. The Claims Administrator is required "to use [its] independent judgment and classify expenses as 'fixed' or 'variable' according to their substantive nature, rather than rational basis review of the claimants' own descriptions." *Id.* at 802.

We reject BP's effort to analogize *Texas Gulf Seafood* to this case. Here, the Appeal Panel did not find that the Claims Administrator correctly applied the Settlement Agreement when it failed to apply the rules governing fixed and variable costs. Instead, it found that even though the Claims Administrator may have failed to apply the proper rule, the Final Proposal submitted by the claimant was closer to the correct result than BP's. Applying the "baseball process," which is part of the settlement, the Appeal Panel picked the claimant's Final Proposal despite the error.

*II. Discrepancies in costs for supplies*

BP's second argument that the district court had to accept review of the Appeal Panel's decision is based upon alleged discrepancies between the expenses for supplies shown on the claimant's tax returns and those shown on its P&Ls. BP claims a correct calculation could decrease the c laimant's award by more than $100,000. The Settlement Agreement requires claimants to submit P&Ls and federal tax returns. Further, the Claims Administrator may request source documents for P&Ls and additional information if there is a discrepancy between the amounts in a tax return and the comparable items in the P&Ls. Separately, an approved policy (Policy 274) supplemental to the Settlement Agreement states that the Claims Administrator will perform a reconciliation of revenue and total expenses, and "[w]here such reconciliation reveals a material discrepancy between the claimant's P&Ls and tax return, the Claims Administrator will seek to resolve the discrepancy." BP claims that "at no point did the [Claims Administrator] inquire into this discrepancy."

BP also argues there is a split in Appeal Panel decisions, with some recognizing a need to resolve discrepancies between a claimant's tax returns and P&Ls and others refusing to do so. BP cites multiple decisions where an Appeal Panel remanded to the Claims Administrator to reconcile P&Ls and tax returns. In one of those decisions, the Appeal Panel found that information in the P&Ls and tax returns was "potentially inconsistent and additional information [was] necessary." BP also cites an Appeal Panel decision refusing to resolve a discrepancy or remand after finding the discrepancy was "negligible."

Here, the Appeal Panel noted in its decision that one of BP's claimed errors was that the Claims Administrator "failed to address material discrepancies between [the claimant's] tax returns and P&Ls regarding expenses . . . . [and] that further investigation would have reduced [the claimant's] award by $30,596." The Appeal Panel then stated that "after a full review of the record, the panel finds no error by the [Claims Administrator] with regard to the discrepancy between [the claimant's] tax returns and its P&Ls."

The Appeal Panel found that on the facts of the claim before it, there was no error in the Claims Administrator's reconciliation of P&Ls and tax returns, and therefore declined to remand the claim. Thus, BP's argument is simply about the accuracy of the decision as to this claimant's case, rather than an argument about the systematic application of the Settlement Agreement. Our conclusion on that point also dispenses with the argument that there is a relevant split in Appeal Panel authority. This case lacks the factual predicate that the Appeal Panel decisions cited by BP include, which is that there was some error by the Claims Administrator. Therefore, any discrepancy in BP's cited Appeal Panel decisions can be explained by the individual facts and circumstances of the claims, where a decision to remand is discretionary. Here,

No. 18-30337

the Appeal Panel specifically found that on the record before it, there was no reconciliation error. We therefore do not find that the district court abused its discretion in refusing to review this claim.

AFFIRMED.