# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 18-31115

———————

Consolidated with 18-31118, 18-31122, 18-31123, 18-31128

United States Court of Appeals
Fifth Circuit

**FILED**
January 14, 2020

Lyle W. Cayce
Clerk

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

      Requesting Parties - Appellants

v.

CLAIMANT ID 100354107,

      Objecting Party - Appellee

———————

Appeals from the United States District Court
for the Eastern District of Louisiana

———————

Before SOUTHWICK, GRAVES, and ENGELHARDT, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

In these consolidated cases, BP appeals the district court's denial of discretionary review of five awards made to Walmart under the Settlement Agreement arising from the 2010 Deepwater Horizon disaster. The arguments before us arise from the change in accounting systems Walmart adopted in May 2010. We AFFIRM.

No. 18-31115 c/w
Nos. 18-31118, 18-31122, 18-31123 18-31128

## FACTUAL AND PROCEDURAL BACKGROUND

On April 20, 2010, an explosion and fire caused the collapse of the Deepwater Horizon drilling rig in the Gulf of Mexico. Among other effects of that disaster was an enormous release of oil into the Gulf. In time, a Settlement Agreement was negotiated between BP, which was leasing the rig at the time of the disaster, and class-action representatives for those who claimed damage from the disaster. In that agreement were provisions for business economic loss ("BEL") claims. Such claims are initially decided by a Claims Administrator as part of a Court Supervised Settlement Program ("CSSP"). PricewaterhouseCoopers ("PWC") is one of the accounting firms that perform initial analysis of the claims for the Claims Administrator.

The current appeal concerns BP's challenge to BEL awards made to Wal-Mart Stores East, L.P. The arguments center on the fact that Walmart changed its accounting system in May 2010, the month after the Deepwater Horizon explosion, which BP argues resulted in artificially inflated award amounts. The accounting change complicated the review of Walmart's BEL claims, which depend in part on showing expenses both before and after the disaster.

In June 2015, Walmart submitted a separate BEL claim to the Claims Administrator for each of Walmart's nine stores along the Gulf Coast. Only five of the claims are at issue here. Each of the five claims was the basis for a separate appeal from BP to this court. The five appeals were consolidated for decision by this panel. In April 2017, Walmart submitted supplemental documentation to the Claims Administrator for each claim. This documentation included a notification to the Claims Administrator that Walmart had changed its accounting system. In these submissions, Walmart sought to reconcile the differences between the two accounting systems.

No. 18-31115 c/w
Nos. 18-31118, 18-31122, 18-31123 18-31128

The Claims Administrator reviewed Walmart's claims with the assistance of PWC accountants. In July and December 2017, PWC and Walmart exchanged emails discussing the changes in Walmart's accounting system. The Claims Administrator's calculation notes give some indication that Walmart's explanations were considered. In February 2018, the Claims Administrator issued awards totaling just over $17.4 million.

BP appealed each of the CSSP's five awards, arguing that Walmart's accounting system change made its profit and loss data for the pre-May 2010 period inconsistent with the same data in the subsequent period. BP identified three accounts that had been treated differently in the pre-May 2010 accounting system than the post-May 2010 accounting system. Specifically, BP noted that "Tires" and "Trailer Parts" were categorized as fixed costs in the pre-May 2010 accounting system, but those two categories did not appear in the post-May 2010 accounting system. A new category, "Trailer Tires," had appeared, though, labeled as a variable cost. According to BP's argument to the Appeal Panels, the result was that, at least for these accounts, Walmart's change in accounting systems caused the pre-disaster period to appear more profitable in comparison to the later period than it really was, thus artificially inflating Walmart's awards. Without stating a position as to whether the three specific accounts were handled appropriately, Walmart in its proposals to the five Appeal Panels agreed to treat all three accounts as variable.

Each of the five Appeal Panels selected Walmart's proposal for the final award amount. Regarding BP's claims that Walmart's change in accounting system skewed the calculations, the Appeal Panels addressed the matter to varying degrees. One Appeal Panel expressly concluded that the CSSP adequately addressed the changes, and all the Appeal Panels concluded that the amount in question BP had identified was minimal and that Walmart's

No. 18-31115 c/w
Nos. 18-31118, 18-31122, 18-31123 18-31128

treatment of the three identified expense accounts as variable across time periods was adequate.

After the variable adjustment in addition to an agreed-upon downward adjustment not relevant here, the final total award amount was just over $15 million. The district court later denied BP's request for discretionary review. This appeal followed.

## DISCUSSION

The issue before us is whether we should reverse the district court for refusing to review the final awards for the five claims. This court applies an abuse-of-discretion standard to the district court's refusal to review a final award under the Settlement Program. *Claimant ID 100212278 v. BP Expl. & Prod., Inc.*, 848 F.3d 407, 410 (5th Cir. 2017). That standard of review requires us to decide whether the final award "actually contradicted or misapplied the Settlement Agreement or had the clear potential to contradict or misapply the Settlement Agreement." *Id.* (punctuation edited) (quoting *Holmes Motors, Inc. v. BP Expl. & Prod., Inc.*, 829 F.3d 313, 315 (5th Cir. 2016)). "It may [also] be an abuse of discretion to deny a request for review that raises a recurring issue on which the Appeal Panels are split if the resolution of the question will substantially impact the administration of the Agreement." *Id.* (quotation marks omitted).

On the other hand, the district court does not abuse its discretion if it denies a request for review that "involves no pressing question of how the Settlement Agreement should be interpreted and implemented, but simply raises the correctness of a discretionary administrative decision in the facts of a single claimant's case." *BP Expl. & Prod., Inc. v. Claimant ID 100094497 (Texas Gulf Seafood)*, 910 F.3d 797, 800 (5th Cir. 2018).

4

No. 18-31115 c/w
Nos. 18-31118, 18-31122, 18-31123 18-31128

To decide whether the district court's refusal to review these final awards should be reversed, we must understand both how BEL claims under the Deepwater Horizon Settlement Agreement are to be processed, and whether the claims before us now resulted from a misapplication or contradiction of those requirements. Claimants must provide evidence to allow the CSSP to compare the actual profits of a business during a claimant-selected pre-disaster period ("Benchmark Period") to the profit that the claimant might have expected to earn in the comparable post-disaster period ("Compensation Period"). The Benchmark Period is the "time period which [a] claimant chooses as the baseline for measuring its historical financial performance." For the Benchmark Period, a claimant may choose "2009; the average of 2008–2009; or the average of 2007–2009." The Compensation Period is the time period after the calamity "selected by the Claimant to include three or more consecutive months between May and December 2010." Awards are calculated by adding together two compensation amounts, calculated in "Step 1" and "Step 2," and then multiplying the sum by an agreed upon "Risk Transfer Premium."

Step 1 Compensation is the difference between Benchmark Period Variable Profit and Compensation Period Variable Profit. Variable Profit, in turn, is the sum of monthly revenue over the relevant period minus variable costs identified in Attachment A to the Settlement Agreement, the variable portion of salaries, and the variable portion of Costs of Goods Sold, for that respective period. Attachment A contains a list of "Variable Costs," which are used to calculate Variable Profit, as well as a list of "Fixed Costs," which are not used to calculate Variable Profit. Thus, whether a cost is defined as "Variable" or "Fixed" alters the size of the award. Step 1 Compensation reflects a claimant's reduction in Variable Profit (revenue minus variable costs) from the Benchmark Period to the Compensation Period.

Step 2 of the calculation is "intended to compensate claimants for incremental profits the claimant might have been expected to generate in 2010 in the absence of the spill, based on the claimant's growth in revenue in January–April 2010 relative to the claimant-selected Benchmark Period." Step 2 Compensation is not at issue here.

Once Step 1 and Step 2 Compensation are determined, they are added together, and then the agreed-upon "Risk Transfer Premium" is applied to determine the total award. The Claims Administrator makes these calculations to determine the final compensation award. Either party, the Claimant or BP, may appeal the Claims Administrator's final award determination to a CSSP Appeal Panel. Then, the Claimant or BP can request discretionary review from the district court.

Walmart supported its BEL claims with two sets of financial statements. First were financial statements from the pre-May 2010 accounting system, which covered Walmart's Benchmark Period of 2007 through 2009 as well as January through April 2010. Second, it included financial statements from the post-May 2010 accounting system, which covered May through December 2010, the remaining eight months of Walmart's Compensation Period. In a memorandum accompanying these submissions, Walmart explained the reconciliation of what it describes as "several dozen" accounts between the pre-May 2010 financial statements and the post-May 2010 financial statements. For variable costs, Walmart noted that "there is greater granularity in the ledger categories in the May–December 2010 financials." By that, Walmart meant "there are additional ledger categories included in the May–December 2010 Financials that are relevant to the compensation calculation."

BP argues that the district court's refusal to review these awards should be reversed because that court's denial of review failed both parts of our review

standard: the Appeal Panels contradicted or misapplied the Settlement Agreement, and there is a split in Appeal Panels on how to address a change in accounting systems when calculating compensation. We consider the arguments separately.

I.    *Contradiction or misapplication of Settlement Agreement*

In its first argument, BP relies on a decision in which we held that the Settlement Agreement required "claims administrators to use their independent judgment and classify expenses as 'fixed' or 'variable' according to their substantive nature, rather than rational basis review of the claimants' own descriptions." *Texas Gulf Seafood*, 910 F.3d at 802. In that precedent, we vacated the district court's denial of BP's request for discretionary review and remanded for further proceedings. *See id.* at 803. That claimant conceded it had misclassified certain costs as fixed when those costs should have been classified as variable, but the claimant argued the Appeal Panel had correctly evaluated the claimant's categorizations under a rational-basis standard and thus had correctly accepted such categorizations. *Id.* at 801. We characterized the claimant's argument as one "for a claims regime that essentially takes claimants at their word and classifies items as they request." *Id.* We concluded that "such an approach would lead to absurd results, in which the CSSP could find itself classifying identical costs enumerated in [Attachment A] as fixed in one claim and variable in another, depending on each claimant's choice." *Id.*

BP argues that our reasoning in *Texas Gulf Seafood* means a claimant who changed its accounting system during the relevant time period, like Walmart did, must provide a comprehensive map detailing how each expense was categorized before and after the change. BP argues that Walmart's change in classification of expenses regarding "Tires," "Trailer Parts," and "Trailer

Tires" is exemplary of the kind of changes that took place. Further, without exhaustive information regarding every expense account, BP argues that neither it nor those involved with evaluating Walmart's claim can know whether there were other relevant changes in classification.

Walmart responds that by providing the supplemental information and reconciliation memorandum to the Claims Administrator, it provided the information necessary for the change in its accounting system to be factored into the calculations. Further, the Claims Administrator took the change into account in making the awards. Walmart also refers us to the Claims Administrator's calculation notes, which indicate awareness of the change in accounting system and that the accounts had been reconciled across systems and time periods as necessary. Further evidence is in Walmart's email exchanges with PWC in which those accountants asked for explanations of certain account changes between the old and new accounting systems. Admitting to the "Tires," "Trailer Parts," and "Trailer Tires" discrepancy, which Walmart asserts it properly resolved before the Appeal Panels by treating the expenses as variable throughout, Walmart argues BP has not identified any other discrepancies even after having access to Walmart's financial statements.

BP is correct that Walmart controlled the information it provided to the Claims Administrator and Appeal Panels. BP argues this information should have been more exhaustive. Nevertheless, BP has not shown that the Claims Administrator or any Appeal Panel contradicted or misapplied the Settlement Agreement, or that there was a clear potential for such contradiction or misapplication. As far as this record shows, the Claims Administrator conducted a searching review of the financial statements Walmart provided from both its old and new accounting system, and the PWC accountants

brought specific clarification questions to Walmart regarding the changes. Walmart responded to the satisfaction of the Claims Administrator. The Appeal Panels considered the parties' positions and concluded that BP had not shown sufficient evidence to warrant remand to the Claims Administrator and that the effect of any identified discrepancy was minimal.

There was not a showing of a misapplication or contradiction of the Settlement Agreement requiring the district court's review.

## II.    *Split among Appeal Panels*

BP also insists there is a split among Appeal Panels on how to address changes in accounting systems like the one at issue here. On one side of the supposed split, BP places two of the five Appeal Panels' decisions at issue here regarding Walmart's change in accounting system, and also one other Appeal Panel decision of which the district court denied BP's request for discretionary review. On the other side of the supposed split, BP places one Appeal Panel decision that remanded a claim to the CSSP after the claimant had shown that, due to a change in the claimant's accounting system, certain accounts were incorrectly classified as variable costs for the Benchmark Period but were correctly classified as fixed costs for the Compensation Period.

Walmart responds that the one Appeal Panel BP has identified, which remanded to the CSSP, was presented with a specific list of 27 accounts that had been classified differently, and from that the Appeal Panel determined that there was sufficient doubt regarding appropriate classification of accounts to justify remand. Walmart argues the Appeal Panel there was presented with specific instances of misclassifications, while the Appeal Panels here were only presented with potential inconsistences.

No. 18-31115 c/w
Nos. 18-31118, 18-31122, 18-31123 18-31128

BP replies that the only reason the Appeal Panel was presented with a specific list of misclassified accounts was that it was the claimant there, not BP, who appealed the CSSP's award determination. The claimant had access to the information necessary to show specific inconsistencies. Here, BP argues, it could not possibly have identified specific misclassifications because it did not have the information necessary to do so. For BP to identify misclassifications, it argues, Walmart was required to provide a comprehensive map describing how each expense classified in Walmart's pre-May 2010 accounting system was classified in its post-May 2010 accounting system.

Although we are sympathetic, we are unconvinced by BP's pleas for more information. Before us is an exercise of judgment, not only by the district court but also by Appeal Panels and the Claims Administrator in deciding when there is enough evidence under the terms of the Settlement Agreement to make an award. In the single Appeal Panel decision that has created BP's purported split, there was extensive evidence that there had been misclassifications that significantly altered the award amount and ordered remand to address the changes. Here, BP is unsatisfied with the amount of information Walmart provided to the Claims Administrator and how extensively the Claims Administrator and its accountants investigated the accounting system change. We see this as a challenge to the Appeal Panels' decisions that "simply raises the correctness of a discretionary administrative decision in the facts of a single claimant's case." *Texas Gulf Seafood*, 910 F.3d at 800.

The district court's denial of a request for discretionary review of such a decision is not an abuse of discretion. AFFIRMED.