# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
August 9, 2019

Lyle W. Cayce
Clerk

No. 18-30971

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP, P.L.C.,

　　　　Requesting Parties–Appellees–Cross-Appellants,

v.

CLAIMANT ID 100248744,

　　　　Objecting Party–Appellant–Cross-Appellee.

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-6399

Before STEWART, Chief Judge, and JONES and OWEN, Circuit Judges.

PER CURIAM:*

This is an appeal from the denial of discretionary review by the district court under the Settlement Program established following the *Deepwater Horizon* spill. Claimant filed a Business Economic Loss claim and sought a Tourism designation that was denied. BP has cross-appealed, contending that the Settlement Program misclassified Claimant's accounts. Both parties

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-30971

appealed the denial of discretionary review.  We affirm in part but vacate in part the denial of discretionary review.  We remand to the district court to review the classification of the Other Production Expenses account.

**I**

We have previously detailed the facts surrounding the *Deepwater Horizon* oil spill, the Settlement Agreement that followed, and the claims process for business economic loss (BEL) claimants.[1]  Relevant to this appeal, Claimant is a multi-purpose arena that hosts professional sporting events, concerts, and other entertainment.  It submitted its claim in September 2013.  It compared its post-spill revenue from July to December 2010 to its pre-spill revenue from July to December 2009.  It also claimed a Tourism designation.  Claimant is located in Zone C.  The default Risk Transfer Premium (RTP) for Zone C is 0.25.  However, if the claimant falls within the Tourism definition, the RTP for Zone C is 2.0.

The Settlement Agreement defines Tourism in Exhibit 2 as "businesses which provide services such as attracting, transporting, accommodating or catering to the needs or wants of persons traveling to, or staying in, places outside their home community."  It lists forty-one NAICS codes that are considered "in the Tourism Industry."  Interpreting that provision, the Claims Administrator promulgated Policy 289 v.2: Definition of Tourism.  According to Policy 289, if the NAICS code for a business is listed in Exhibit 2, that business will be considered to fall within the Tourism definition.  The Claims Administrator considers the list of codes to be "illustrative, not exhaustive."  If the most appropriate NAICS code for the business is not listed in Exhibit 2, "that claimant may still be considered to fall within the Tourism definition if

---

[1] *See In re Deepwater Horizon*, 732 F.3d 326, 329-30 (5th Cir. 2013); *see also In re Deepwater Horizon*, 785 F.3d 1003, 1007 (5th Cir. 2015).

No. 18-30971

the Claims Administrator determines in his discretion that the claimant's business meets the definition" in Exhibit 2.

The claims process begins when a claimant files a Claim Form with the Settlement Program. If the claimant fails to submit sufficient documentation, the Settlement Program will send an incompleteness notice. The Settlement Program then evaluates the claim and awards the claimant the maximum that it is entitled to under the Settlement. The Settlement affords multiple opportunities for review of an initial decision. If the decision of the Settlement Program rests on a lack of documents, the claimant may seek review of that decision and supply more documents. The claimant may also request reconsideration by the Settlement Program. If either the claimant or BP is still dissatisfied with the result, it may appeal to an Appeal Panel consisting of one or three panelists. The parties may seek discretionary review in the district court of an Appeal Panel decision.

The instant claim was identified as one of the claims with profit-and-loss statements that were not matched, so the Settlement Program sent an incompleteness notice. Claimant provided additional documents and the Settlement Program applied Policy 495 to match the profit-and-loss statements. The Settlement Program determined that Claimant was entitled to $2,101,909.26 in compensation. It concluded that Claimant did not qualify for a Tourism designation and applied a 0.25 RTP multiplier, for an additional compensation amount of $525,477.32. Together with accounting support, the total initial award was $2,651,167.38.

Claimant sought re-review, arguing that it was entitled to a Tourism designation. It attached a list of events held at the arena and argued that even though its NAICS code was not on Exhibit 2, it met the general Tourism definition in Exhibit 2. The events identified included home games for professional sports teams, concerts, ministry events, car shows, and university

3

graduations. It did not, however, include an indication of how many customers and attendees came from outside their home communities. BP argued that the non-Tourism designation was proper and that the Claims Administrator had misclassified some of Claimant's accounts.

The Settlement Program subsequently issued a new Eligibility Notice. It again denied Claimant a Tourism designation. In addition, it determined that Claimant was only entitled to $1,743,053.95 in compensation, with $433,763.49 in RTP, for a total award of $2,194,182.44.

Claimant sought reconsideration. It argued that the Settlement Program had not seriously considered its arguments in favor of its Tourism designation. It also attached additional documentation claiming that at least 30% of its account and ticket revenue for 2010 came from customers located more than 60 miles from the arena. That percentage excluded events from the local professional sports teams. It also submitted additional information showing the geographical range of its advertising and where those advertisements were targeted.

The Settlement Program again denied the Tourism designation. It concluded that "[t]he claimant has not provided objective evidence sufficient to change the Non-Tourism designation." It noted that the list provided in Claimant's reconsideration request "does not contain a customer list, therefore it is impossible to make a determination of the percentage of Claimant's 2010 revenue derived from persons traveling over 60 miles to visit the business." The award was revised slightly, providing a total amount of $2,208,405.98 after RTP and accounting support.

Claimant appealed to an Appeal Panel. It reiterated its objections to its Non-Tourism designation and attached copious Ticketmaster data purporting to verify that its customers travel from outside their home communities. It also argued that the Settlement Program improperly required a customer list

No. 18-30971

without giving notice. Based on the Ticketmaster data, Claimant argued that between 48-52% of its revenue comes from "nonlocal" customers. Claimant did not define "nonlocal." BP again defended the non-Tourism designation and argued that certain accounts were improperly classified. BP argued that the Settlement Program did not exercise its independent judgment when classifying the accounts and instead copied Claimant's descriptions verbatim.

The Appeal Panel affirmed the award in all respects. It reasoned that Appeal Panels have used various data "to determine if a business primarily caters to or accommodates the needs and wants of tourists." It acknowledged that no bright-line test exists but that most decisions require "a percentage of 50 or better of total revenues being derived from non-local customers for all revenue generating events to measure tourism involvement." Based on those metrics, it concluded that Claimant did not qualify because, at most, 30-36% of account and ticket revenues are derived from non-local customers. The panel also rejected BP's arguments that certain accounts were misclassified, concluding that there was no basis for any of BP's contentions.

Both parties sought discretionary review with the district court. The district court denied review without comment. Claimant appealed to this court. BP cross-appealed.

## II

We review the district court's denial of discretionary review for abuse of discretion.[2] It is generally an abuse of discretion not to review a decision that "actually contradicted or misapplied the Settlement Agreement, or had the clear potential to" do so.[3] However, we have been careful to note that it is

---

[2] *Claimant ID 100212278 v. BP Expl. & Prod., Inc.*, 848 F.3d 407, 410 (5th Cir. 2017) (per curiam) (citing *Holmes Motors, Inc. v. BP Expl. & Prod.*, 829 F.3d 313, 315 (5th Cir. 2016)).

[3] *Id.* (quoting *Holmes Motors*, 829 F.3d at 315).

"wrong to suggest that the district court must grant review of all claims that raise a question about the proper interpretation of the Settlement Agreement."[4]  It is not an abuse of discretion to deny a request for review that "involve[s] no pressing question of how the Settlement Agreement should be interpreted or implemented, but simply raise[s] the correctness of a discretionary administrative decision in the facts of a single claimant's case."[5] It may also be an abuse of discretion to deny a request for review that raises a recurring issue on which the Appeal Panels are split if "the resolution of the question will substantially impact the administration of the Agreement."[6]

## A

Claimant argues that the Settlement Program and Appeal Panel improperly concluded as a factual matter that it is not in the Tourism industry. The Appeal Panel decision concluded that Claimant did not meet its burden of proof with the supporting documents that it provided.  The amount of supporting documentation required and factual determinations are the kind of discretionary administrative decisions that do not require district court review, and we will not overturn the district court's decision on that basis.

Claimant contends that there is a split among Appeal Panels as to whether the fact that 30% of a business's customers are non-locals is sufficient to satisfy the definition of Tourism for purposes of the Settlement Agreement.

---

[4] *Id.* (quoting *Holmes Motors*, 829 F.3d at 316); *see also In re Deepwater Horizon*, 785 F.3d 986, 999 (5th Cir. 2015) ("We do not intend any part of this opinion to turn the district court's discretionary review into a mandatory review. To do so would frustrate the clear purpose of the Settlement Agreement to curtail litigation.").

[5] *Claimant ID 100212278*, 848 F.3d at 410 (alterations in original) (quoting *In re Deepwater Horizon*, 641 F. App'x 405, 410 (5th Cir. 2016) (per curiam)).

[6] *Id.* (quoting *In re Deepwater Horizon*, 632 F. App'x 199, 203-04 (5th Cir. 2015) (per curiam)).

No. 18-30971

However, it does not appear that decisions are split regarding the percentage of customers who are non-local in order to support the Tourism designation.

**B**

As an independent basis for remand, Claimant argues that the Appeal Panel did not follow precedent from a similar claim. We take this to be an argument that there is a split among Appeal Panels that required district court review.[7] We do not accept the argument that there is a split every time an Appeal Panel comes to a different result. "[T]he fact that Appeal Panels have reached different conclusions for this issue depending on the circumstances of each case does not represent the type of Appeal Panel split that would require the district court's review."[8]

A sports stadium in the same area as the arena at issue in the present case received a Tourism designation. However, the facts of that particular case are not identical to the facts in the present case. In that case, the claimant was a football stadium that primarily derived its revenue from concessions and parking. The stadium hosted a variety of events such as NFL and NCAA games, monster truck rallies, and concerts. The Appeal Panel rejected BP's argument that the majority of visitors "are, no doubt, locals to the area." After de novo review, that Appeal Panel found no error in the Settlement Program's determination that the stadium was in the Tourism industry. By contrast, the nature of the sports events hosted by the arena were not as likely to draw crowds from distant locales or to draw them in the numbers that the stadium in the prior case had. We do not have the record in the prior case before us,

---

[7] *See id.* (quoting *In re Deepwater Horizon*, 632 F. App'x at 203-04) (acknowledging that it may be an abuse of discretion not to review when the request raises a recurring issue on which the Appeal Panels are split if "the resolution of the question will substantially impact the administration of the Agreement").

[8] *Claimant ID 100051301 v. BP Expl. & Prod., Inc.*, 694 F. App'x 236, 240 (5th Cir. 2017) (per curiam).

and we cannot say that, as a factual matter, there is actually a conflict between the manner in which the stadium was given a Tourism designation and the manner in which it was decided that the arena did not qualify for a Tourism designation. These are factually intensive inquiries. The Claimant in the present case did not meet its burden of establishing that non-locals attended the events it hosted, including local hockey and football games, in sufficient numbers to require a factual finding that the Tourism designation must be applied. We give deference to the Settlement Program's decision regarding what evidence is sufficient to substantiate a claim.

## C

Claimant also argues that the Settlement Program improperly required a customer list without notifying Claimant of the requirement. It bases this claim on Section 4.3.7 of the Settlement Agreement, which requires the Settlement Program to "use its best efforts to provide [claimants] with assistance, information, opportunities and notice so that the [claimant] has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the [claimant] is entitled." The Appeal Panel considered this argument and rejected it. The Appeal Panel considered the absence of a customer list noted by the Settlement Program to be "a relevant observation," not an absolute requirement. We cannot say that the district court abused its discretion by failing to review that determination. The Appeal Panel's determination that the Settlement Program did not require a customer list does not raise any issue of the proper interpretation of the Settlement Agreement.[9]

---

[9] *See Claimant ID 100212278*, 848 F.3d at 410 (citation omitted).

No. 18-30971

**D**

Claimant further argues that the Appeal Panel erred in failing to remand its claim for further analysis after it provided new data. However, it does not cite any relevant portion of the Settlement Agreement that mandates such a result or a split among the Appeal Panels. Accordingly, there is no basis to hold that the district court abused its discretion by failing to review that portion of the Appeal Panel's decision.

**III**

BP cross-appeals, arguing that the Appeal Panel erred by failing to use its independent judgment to classify Claimant's accounts. In particular, BP urges that Claimant's "Other Production Expenses" account was improperly characterized as a fixed expense and its "Shares" accounts were improperly characterized as contra-revenue.

The Settlement Agreement compensates businesses for lost Variable Profit. Variable Profit is reduced by variable expenses but does not consider fixed expenses. Accordingly, whether an expense is classified as "fixed" or "variable" can significantly impact the size of the award.[10] Exhibit 4D to the Settlement Agreement contains a list of expenses which the parties stipulated are fixed or variable. Contract labor, consumable goods, freight, and fuel are among the items defined as "variable expenses." "Fixed" expenses include internet fees, postage, and uniforms, among others. We held in *Texas Gulf Seafood* that the Settlement Agreement requires claims administrators to use their independent judgment and to classify expenses according to their substantive nature, rather than rational basis review of the claimants' own descriptions.[11]

---

[10] *BP Expl. & Prod., Inc. v. Claimant ID 100094497* (*Texas Gulf Seafood*), 910 F.3d 797, 799 (5th Cir. 2018).

[11] *Id.* at 802.

No. 18-30971

**A**

BP asserts that the Settlement Program adopted Claimant's description of its "Other Production Expenses" account without using its independent judgment as to the substantive nature of the expense. Neither the record nor Claimant's briefing indicates how Claimant described the expenses apart from the account label. The record does not clearly indicate whether these expenses were fixed or variable.

Claimant asserts that the Other Production Expenses account is part of Direct Event Expense. It contends that the account is an overhead expense relating to the actual events themselves and not directly tied to ticket sales or concessions. Claimant suggests that the expense includes equipment rentals for events, which will incur the same cost regardless of the amount of revenue earned. However, Claimant does not cite any record document to support is characterization of the account. It does cite a Deepwater Horizon Document Portal ID number, though it does not indicate where that document can be found in the 25,000-page record before this court. Nevertheless, we located the document, and it does not mention the Other Production Expenses account and contains no information about the substantive nature of those expenses.

In *Texas Gulf Seafood*, the claimant served as an intermediary for Texas gulf shrimpers, freezing and packing shrimp and arranging for delivery to wholesalers.[12] When it submitted its BEL claim to the Settlement Program, it explained that its "supplies" account consists of "items which are used to unload, process, and package shrimp, such as packing bags and other materials."[13] Importantly for purposes of that appeal, "supplies" are classified

---

[12] *Id.* at 799.
[13] *Id.*

as fixed expenses by the Settlement Agreement.[14]  The claims administrator initially categorized the claimant's account as a variable expense because it determined that the expense fluctuated based on the amount of shrimp the company shipped.[15]  The claimant sought reconsideration and eventually appealed to an Appeal Panel.[16]  The Appeal Panel agreed with the claimant and held that the claims administrator should defer to the claimant's labels for the expense so long as the claimant has a rational basis for labeling the expense as fixed or variable.[17]  The district court declined discretionary review.[18]  We reversed, holding that the language of the Settlement Agreement required the claims administrators to use independent judgment to classify the expenses as fixed or variable.[19]

Here too, it is apparent that the Settlement Program did not exercise its independent judgment and deferred to Claimant's description of the Other Production Expense account.  The only evidence in the record of the substantive nature of the account is its label.  That provides no basis for the claims administrators to exercise independent judgment.  Claims administrators cannot exercise their independent judgment if there is no evidence describing the substantive nature of the account.  There may be instances in which the label on the account is sufficiently clear and specific for claims administrators to evaluate the substantive nature of the account, but *Texas Gulf Seafood* mandates reversal in this instance.[20]  Accordingly, the

---

[14] *Id.*

[15] *Id.*

[16] *Id.* at 800.

[17] *Id.*

[18] *Id.*

[19] *Id.* at 802.

[20] *See id.*

No. 18-30971

district court abused its discretion by failing to review the Appeal Panel's decision that misapplied the Settlement Agreement.

**B**

BP also argues that the Settlement Program misclassified Claimant's "Shares" accounts as contra-revenue rather than a variable expense. BP repeats its arguments that the Settlement Program copied Claimant's descriptions of the Shares accounts and did not exercise its independent judgment. Claimant provided information to the Settlement Program in response to questions about the Shares accounts, indicating that the accounts "are actual payments that [Claimant] ma[de] to the show promoters for their portion of revenues generated per the contracted deal that [Claimant] ha[d] for that particular event. The 'Share' accounts usually have a negative amount because this is a payment to the show promoters." The Calculation notes of the Settlement Program did copy that description almost verbatim but added: "[a]s both 'Billed' and 'Shared' amounts net to the correct revenue to be recognized, DWH Accountant classified all 'Billed' and 'Shared' revenue accounts as Revenue." Accordingly, there is at least some evidence that the Settlement Program exercised its independent judgment in classifying the Shares accounts and considered the effect the classification would have on revenue. Further, BP has not explained how the classification as contra-revenue versus a variable expense would have affected the award in this instance. Both contra-revenue and variable expenses decrease Variable Profit. The district court did not abuse its discretion by declining to review the classification of those accounts.

\* \* \*

The district court abused its discretion by failing to review the Settlement Program's classification of the Other Production Expenses account

## No. 18-30971

in this case.    The district court's judgment is VACATED in part and AFFIRMED in all other respects.